Argued and submitted December 1, 1989, affirmed March 14, 1990

McKAY,
*Petitioner,*

*v.*

BOARD OF MEDICAL EXAMINERS OF
THE STATE OF OREGON,
*Respondent.*

(CA A60149)

788 P2d 476

William Dickas, Portland, argued the cause for petitioner. With him on the brief were Thomas J. Matsuda, and Kell, Alterman & Runstein, Portland.

Janet Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

As a result of disciplinary action taken with respect to petitioner's licenses to practice medicine in other states, the Board of Medical Examiners (Board) filed a complaint to revoke or suspend his license to practice medicine in Oregon.[1] The hearings officer found that petitioner had been disciplined by the Minnesota Board of Medical Examiners and that his license to practice had been revoked by the North Dakota Board of Medical Examiners, because he stipulated to facts in the Minnesota order that

"A. From approximately February, 1983, through April, 1983, [petitioner] made unnecessary house calls to patient #1's home following her surgery which resulted in [petitioner] receiving 'loans' from patient #1, a vulnerable adult, without any form of documentation or loan repayment schedule, on the following occasions:

"1) January 27, 1984 - $10,000.00

"2) August, 1984 - $2000.00

"3) December, 1984 - $15,000.00

"* * * * *

"C. A review of [petitioner's] patient charts reflects improper management of medical records, including the failure to maintain adequate medical records[.]"

The hearings officer held that petitioner's stipulated conduct constituted "unprofessional conduct" within the meaning of ORS 677.190(1) and proposed that petitioner be placed on probation. The Board adopted the hearings officer's proposed findings and conclusions but ordered that petitioner's license be revoked. Petitioner seeks judicial review.

Petitioner first argues that the Board erred in treating the Minnesota and North Dakota disciplinary orders as "conclusive evidence of the events related therein." He argues that it misinterpreted ORS 677.190(16):

"The board may refuse to grant, or may suspend or revoke a license to practice medicine or podiatry in this state * * * for any of the following reasons:

---

[1] Petitioner, who became licensed to practice in Oregon in 1985 by reciprocity, was also charged with committing fraud in applying to activate his license in 1987. The Board found that no fraud occurred.

"*****

"(16)   The suspension or revocation by another state of a license to practice medicine or podiatry, based upon acts by the licensee similar to acts described in this section. A certified copy of the record of suspension or revocation of the state making such suspension or revocation is conclusive evidence thereof."

Petitioner contends that another state's disciplinary record is only conclusive as to the fact of that state's disciplinary action and not as to the truth of the facts that underlie that action.[2] Petitioner misreads the statute. ORS 677.190(16) allows the Board to suspend or revoke a physician's license if it finds (1) that another state has suspended or revoked the physician's license and (2) that the suspension or revocation was based on acts by the physician similar to acts proscribed in ORS 677.190. The Board is not required to relitigate the basis of the orders or to evaluate the sufficiency of the other state's proof of the underlying conduct. Its determination is only whether the license was suspended or revoked and whether the acts on which that discipline was based were similar to acts proscribed in Oregon. The Board correctly determined that the Minnesota and North Dakota orders are conclusive evidence of the events related therein.

In his second assignment, petitioner argues that the Board erred in concluding that his conduct in Minnesota constituted "unprofessional conduct," as described in ORS 677.190(1). The Board held that petitioner's conduct

"was similar to acts described in ORS 677.190(1) in two respects:

"(a)   Making unnecessary house calls to a patient which resulted in the Licensee receiving 'loans' from an elderly, vulnerable patient with no documentation or loan repayment schedule was conduct unbecoming a person licensed to practice medicine and was contrary to recognized standards of ethics of the medical profession. ORS 677.188(4)(a).

"(b)   Improper management of medical records, including the failure to maintain adequate medical records is conduct which does or might constitute a danger to the health or

---

[2] In effect, petitioner is trying to attack the validity of his stipulation. A party may be relieved of a stipulation by a timely motion and a showing of good cause; however, no motion was made in this case. *See Norris v. Norris,* 302 Or 123, 125 n 1, 727 P2d 115 (1986).

safety of a patient or the public, and does or might impair a physician's ability to safely and skillfully practice medicine. ORS 677.188(4)(a)."

Citing *Megdal v. Bd. of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980), petitioner argues that those findings are flawed, because they could only be made after rulemaking defining "unprofessional conduct." In *Megdal,* the court examined the term "unprofessional conduct," as used in statutes pertinent to the practice of dentistry, as a basis for revocation of a dentistry license. The court concluded that the term must be interpreted before being applied in a disciplinary proceeding, reasoning that

"when a licensing statute contains both a *broad standard of 'unprofessional conduct' that is not fully defined in the statute itself* and also authority to make rules for the conduct of the regulated operation, the legislative purpose is to provide for the further specification of the standard by rules, unless a different understanding is shown." 288 Or at 313. (Emphasis supplied.)

We answered petitioner's argument in *Spray v. Bd. of Medical Examiners,* 50 Or App 311, 624 P2d 125, *modified* 51 Or App 773, 627 P2d 25, *rev den* 291 Or 117 (1981), as to the Board's holding that petitioner's failure to maintain records impaired his ability safely and skillfully to practice medicine. As in *Spray,* this case does not involve "a broad standard of 'unprofessional conduct' that is not fully defined in the statute itself[.]'' Unprofessional conduct *is* defined. ORS 677.188(4)(a) provides:

"Unprofessional or dishonorable conduct means * * *

"(a) Any conduct or practice contrary to recognized standards of ethics of the medical or podiatric profession or any conduct or practice which does or might constitute a danger to the health or safety of a patient or the public or any conduct, practice or condition which does or might impair a physician's or podiatrist's ability safely and skillfully to practice medicine or podiatry[.]"

"[T]hat definition * * * sets a standard of 'unprofessional or dishonorable' conduct that can only be determined on an individual case basis." *Spray v. Bd. of Medical Examiners, supra,* 50 Or App at 319. It was determined in this case through expert testimony what the standards of conduct regarding

health and safety are and whether the physician's actions violated them.

However, the Board's other holding, that petitioner had acted contrary to recognized standards of ethics of the medical profession by making unneccessary house calls and receiving undocumented loans from a vulnerable patient, has not been addressed. *Spray v. Bd. of Medical Examiners, supra,* relying on *Megdal v. Bd. of Dental Examiners, supra,* suggests that "ethical standards" may be unlike "professional medical standards" and might have to be established by rulemaking. 50 Or App at 319. Whether "recognized standards of ethics" must be defined by rulemaking is a matter of interpretation of the statutes under which the Board operates, and we seek to derive the intent of the legislature. *Trebesch v. Employment Div.,* 300 Or 264, 267, 710 P2d 136 (1985).

■    The statutory framework does not mandate rulemaking before a physician can be found to have violated ethical standards. The legislature has required promulgation of rules for the licensing of physicians but did not do so for discipline. ORS 677.265(1)(a). As noted, ORS 677.190 provides that the Board may discipline a physician for "unprofessional or dishonorable conduct." Before 1975, "unprofessional or dishonorable conduct" was simply defined as "conduct unbecoming a person licensed to practice medicine, or detrimental to the best interests of the public." ORS 677.188(4) (1973). In 1975, the legislature expanded the definition to include "[a]ny conduct or practice contrary to *recognized* standards of ethics of the medical profession." Or Laws 1975, ch 796, § 1. (Emphasis supplied.) In a statement of intent, placed in the legislative record, the legislature indicated that, by using the term "recognized," it intended to incorporate by reference ethical standards recognized by organized medicine relating to the protection of patients, but did not intend the disciplinary standards to include principles directed toward issues of physicians' relationships among themselves.[3] Both the rulemak-

---

[3] The statement provides, in pertinent part:

"[T]hose aspects of the principles of medical ethics reasonably related to patient protection are so intertwined with ethical provisions and interpretations unrelated to the malpractice problem that it does not appear practical, within the time available to this legislature, to do a discriminating job in determining which portions of the principles of medical ethics (as interpreted through appropriate channels within organized medicine) are relevant to the purposes of this

ing power given to the Board and the legislative history show a legislative recognition of the uniformity of ethical standards and an intention that those standards need not be defined by rulemaking. As the Supreme Court recognized in *Megdal v. Bd. of Dental Examiners, supra:*

> "[A]n occupational licensing law might use 'unprofessional conduct' to refer to norms of conduct that are uniformly or widely recognized in the particular profession or occupation, apart from the views of the agency itself and in this sense 'external' to the law." 288 Or at 304.

The Board, therefore, was not required to define "recognized standards of ethics" by rulemaking.

■■    Petitioner finally contends that the Board wrongly excluded him and his attorney from its deliberations. Both he and his attorney were present at the meeting at which his case was considered, but the Board met privately to reach its final decision. It did not err. The Open Meetings Law, ORS 192.610 *et seq,* applies to the Board, but ORS 192.690(1) specifically excludes "deliberations * * * of state agencies conducting hearings on contested cases."[4]

Affirmed.

---

legislation and which are not.

"Accordingly, we declare it to be the intent of the legislature that the stigma and sanctions applicable to violations of the principles of medical ethics are intended to apply to such violations as are reasonably relevant to protection of patients or which might otherwise be reasonably regarded as contributing factors to the problem of professional malpractice, but that it is not the intent of the legislature to extend such stigma and sanctions to aspects of the principles of medical ethics which are not reasonably related either to patient protection or to professional malpractice. In particular, possible future changes in the principles of medical ethics which would call into question any method of organizing, delivering or financing health care services currently accepted as ethical are not intended to be sanctioned by the provisions regarding medical ethics in this legislature." Minutes, Senate Consumer and Business Affairs Committee, June 2, 1975 — Statement of Intent.

[4] Petitioner also argues that the Board's conclusion that his conduct constituted "unprofessional conduct" and its subsequent order of revocation are not supported by substantial evidence. The argument is without merit.