Argued and submitted October 17, 1997, affirmed September 2, 1998, petition for review allowed March 2, 1999 (328 Or 330)

# COAST SECURITY MORTGAGE CORPORATION,
*Petitioner,*

*v.*

# REAL ESTATE AGENCY,
*Respondent.*

(995-E-409G; CA A95785)

964 P2d 306

Gary Roberts argued the cause for petitioner. With him on the brief was Schwabe, Williamson & Wyatt, P.C.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Petitioner seeks judicial review of a contested case proceeding in which the Real Estate Agency found that, in 47 separate instances, petitioner had acted in the capacity of an escrow agent without being licensed to do so. Based on that finding, the Agency ordered petitioner to pay $23,100 in civil penalties. We affirm.

The Agency made the following findings of fact, based on the parties' stipulation. Petitioner is a mortgage broker and is not licensed to conduct escrow activity in Oregon. At the time of the activities at issue, Jeff Paget was employed by petitioner. Paget does not hold a license to conduct escrow activity in Oregon. Paget met with 47 customers of petitioner at the customers' homes or in petitioner's offices. In his meetings with those customers, Paget presented them with loan documents for their signatures and explained the contents of the documents. Paget also presented customers with escrow documents that had been prepared by escrow companies in California. Those documents included escrow instructions and settlement statements. Paget explained the content of the escrow documents to the customers and told them that they would not be required to deal directly with the escrow firms. The customers signed the documents and Paget notarized them. Paget then arranged for the signed documents to be sent to petitioner's California office, which then forwarded the escrow documents to the California escrow companies.

On May 8, 1995, Ronald Eckart filed a complaint with the Financial Fraud Section of the Department of Justice, claiming that petitioner had defrauded him in arranging the refinancing of his home. The complaint was forwarded to the Agency, which ultimately charged petitioner with violating ORS 696.511(1) by acting in the capacity of an escrow agent through its employee, Paget.[1] After a contested case

---

[1] ORS 696.511(1) provides:

"No person directly or indirectly shall engage in or carry on, or purport to engage in or carry on the business or act in the capacity of an escrow agent without first obtaining a license as an escrow agent under the provisions of ORS 696.505 to 696.590."

hearing, the Agency ruled that petitioner had violated the statute and imposed a civil penalty of $100 for the first offense and $500 for each of the 46 remaining offenses, the minimum civil penalties allowable under ORS 696.590(1).

Petitioner makes three assignments of error: first, that the Agency erred in finding that petitioner had "acted in the capacity of an escrow agent" when neither petitioner nor its employee Paget had undertaken any of the activities detailed in the statutory definitions of "escrow" and "escrow agent"; second, that the Agency's order is not supported by substantial evidence; and third, that the Agency is required to define the phrase to "act in the capacity of an escrow agent" by rule and not by adjudication.

The terms "escrow" and "escrow agent" are defined by ORS 696.505:

> " 'Escrow' means any transaction wherein any written instrument, money, evidence of title to real or personal property or other thing of value is delivered to a person:
>
> "(a)  Not otherwise having any right, title or interest therein for the purpose of effecting the sale, transfer, encumbrance or lease of real or personal property, to be held by that person as a neutral third party until the happening of a specified event or the performance of a prescribed condition, when it is then to be delivered by such person to a grantee, grantor, promisee, promisor, obligee, obligor, bailee, bailor, or any agent or employee of any of them pursuant to the written instructions of the principals to the transaction; or
>
> "(b)  For the purpose of effecting the sale of the person's own real or personal property, to be held by that person until the happening of a specified event or the performance of a prescribed condition, when it is then to be delivered by such person to a grantee, grantor, promisee, promisor, obligee, obligor, bailee, bailor, or any agent or employee of any of them pursuant to the written instructions of the principals to the transaction."

ORS 696.505(2).

> " 'Escrow agent' means any person who engages in the business of receiving escrows for deposit or delivery and who receives or is promised any fee, commission, salary or

other valuable consideration, whether contingent or otherwise, for or in anticipation of performance."

ORS 696.505(3). Petitioner interprets those statutes to mean that, in order for a person to act in the capacity of an escrow agent, that person must be engaged in the business of receiving escrows. We disagree.

■ ORS 696.511(1) states that "no person directly or indirectly shall engage in or carry on, or purport to engage in or carry on the business *or* act in the capacity of an escrow agent without first obtaining a license." To interpret the phrase to "act in the capacity of an escrow agent" to mean to "engage in the business of an escrow agent" would make the legislature's use of the latter phrase redundant. We are directed to construe statutes so as to give effect to all of their provisions. ORS 174.010. Thus, we conclude that to act in the capacity of an escrow agent is not the same as engaging in the business of an escrow agent.

We turn to whether the Agency had the authority to decide by adjudication whether petitioner had acted in the capacity of an escrow agent.[2] It is apparent from the Agency's order that it considered Paget's act of explaining escrow documents to clients before they signed them to be the offending act,[3] but that conclusion was not based on any Agency rule, internal guideline or earlier contested case. Petitioner contends that the Agency could not establish a meaning for "act[ing] in the capacity of an escrow agent" through an order in a contested case but, rather, had to promulgate a rule or rules to give content to that phrase. We disagree.

---

[2] Because of the nature of our analysis, we address petitioner's arguments out of sequence.

[3] Petitioner characterizes Paget as a mere courier of the escrow documents and argues that the order would require the Agency to fine other possible couriers, such as the Postal Service or Federal Express, that deliver escrow documents to escrow companies. It is clear from the stipulated facts, however, that Paget did more than deliver the documents. The stipulation provides, in part:

"At these meetings, Paget presented to and discussed with [petitioner's] clients all documents the clients had to sign, including escrow instructions and settlement agreements[.]"

In *Trebesch v. Employment Division*, 300 Or 264, 710 P2d 136 (1985), the Supreme Court held that "[a]gencies generally may express their interpretation of the laws they are charged with administering either by adjudication or by rulemaking, or both." *Id.* at 273. In determining whether, in a particular situation, an agency is required to implement a statutory policy through rulemaking alone, the pivotal factor is whether the legislature has expressly required the agency to do so. For instance, in *Dinkins v. Board of Accountancy*, 118 Or App 220, 224-25, 846 P2d 1186 (1993), we concluded that the Board of Accountancy was required to promulgate rules to evaluate the prior experience of candidates seeking certification as public accountants. Our conclusion was based on the fact that the applicable statute required applicants to have experience "satisfactory to the board *under its rules.*" ORS 673.060(1) (emphasis added).

In contrast, in *McKay v. Board of Medical Examiners*, 100 Or App 685, 691, 788 P2d 476 (1990), we concluded that the Board of Medical Examiners could give content to a disputed statutory term through contested case decisions when the relevant statutes did not expressly require rulemaking and when the meaning of the disputed term could be determined by resort to " 'norms of conduct that are uniformly or widely recognized in the particular profession or occupation.' "

Here, the relevant statutes do not expressly require the Agency to adopt rules to enforce the statutes that it is charged with administering. Moreover, the acts that could constitute "act[ing] in the capacity of an escrow agent" can be determined by examining the norms of conduct of the licensed profession. Accordingly, we conclude that it is within the Agency's authority to determine on a contested case basis whether a given individual has "act[ed] in the capacity of an escrow agent."

Finally, petitioner contends that the Agency's conclusion is not supported by substantial evidence. We disagree. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make the finding. ORS 183.482(8)(c). Petitioner stipulated that its employee, Paget, represented to

customers that they would not have to deal with the California escrow companies and that Paget discussed the escrow documents with the customers and explained their purpose. Despite petitioner's attempts to describe those actions as those of a mere "courier," it is clear that he went well beyond that role.[4] The statutory definition of escrow agent includes receiving escrows for delivery or deposit in exchange for a fee, commission, salary or other valuable consideration. The Agency further reasoned that, because the creation of an escrow requires written instructions to be prepared and signed by the principals to the transaction, ORS 696.581, the preparation and explanation of those instructions is within the duties of an escrow agent. Petitioner stipulated that, as part of Paget's employment for which he received a salary, Paget delivered, explained and notarized escrow documents.

Furthermore, the Agency heard testimony from Sharon Woods, an employee of the Agency who had worked as an escrow agent, or in escrow-related work, for 20 years before being employed by the Agency. Woods testified that, by discussing and explaining the escrow documents, Paget had performed the same type of tasks that she had performed as an escrow agent. The testimony of petitioner's witness, Alan Brickley, in contrast, was useful only in determining whether or not petitioner had engaged in the escrow business which, as we have already stated, is not the same as acting in the capacity of an escrow agent. We conclude that there is substantial evidence in the record to support the Agency's decision.

Affirmed.

---

[1] For example, a legal secretary does not practice law by delivering legal forms or documents to a client but could be charged with doing so if the secretary explained their content to the client. The same is true here under the Agency's construction of the statutory term.