Argued and submitted September 9, 1999, decision of the Court of Appeals and order of the Real Estate Agency reversed December 7, 2000

## COAST SECURITY MORTGAGE CORPORATION,
*Petitioner on Review,*

*v.*

## REAL ESTATE AGENCY,
*Respondent on Review.*

(995-E-409G; CA A95785; SC S45845)

15 P3d 29

Gary Roberts, Portland, argued the cause for petitioner on review. With him on the petition and brief was Schwabe, Williamson & Wyatt, P.C., Portland.

Jas. Jeffrey Adams, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs, Justices.**

** Kulongoski, J., did not participate in the consideration or decision of this case.

CARSON, C. J.

**CARSON, C. J.**

In this administrative law case, we must construe ORS 696.511(1), the escrow agent licensing statute, which requires a person to obtain a license if that person "act[s] in the capacity of an escrow agent." The Real Estate Agency (Agency) issued a final order concluding that Coast Security Mortgage Corporation (Coast Security), a mortgage broker that was not licensed as an escrow agent, had violated ORS 696.511(1) when it explained escrow instructions and settlement statements to its customers, obtained and notarized their signatures, and subsequently sent the documents to an escrow company. The Court of Appeals affirmed the agency's final order. *Coast Security Mortgage Corp. v. Real Estate Agency*, 155 Or App 579, 964 P2d 306 (1998). We allowed review to consider whether such acts constitute "act[ing] in the capacity of an escrow agent" under ORS 696.511(1). For the reasons that follow, we conclude that they do not. We therefore reverse the decision of the Court of Appeals and the order of the Agency.

We take the facts from the Court of Appeals' opinion and from the record. Coast Security is a licensed mortgage broker in Oregon.[1] As part of its business plan, Coast Security attempted to differentiate itself in the marketplace by providing, as a convenience and service to its customers, the opportunity to sign refinancing loan documents, settlement statements, and escrow instructions at home or at Coast Security's office, rather than at the office of a licensed escrow agent. Paget, an employee of Coast Security, handled 47 such residential refinancings. His activities in those refinancings provide the basis for the complaint at issue here.

In each of the transactions, a lender prepared the loan documents, and a California escrow company prepared the escrow instructions and settlement statements. Once prepared, the lender and escrow company sent the documents to Coast Security, which forwarded them to Paget to

---

[1] A "mortgage broker" is one who, "[f]or compensation, or in the expectation of compensation, either directly or indirectly makes, negotiates or offers to make or negotiate a mortgage loan." ORS 59.840(6)(C).

take to the customers. Paget visited the customers in their homes or met them at Coast Security's office. He introduced himself with his business card, which identified him as an employee of Coast Security. Paget then presented and discussed with the customers all the documents that the customers were to sign.

The documents that Paget explained to the customers included the escrow instructions and settlement agreements. The escrow instructions were directed to the escrow company that had drafted them. Similarly, the escrow company that had drafted the settlement statements was listed as the settlement agent. The settlement statements also set out the amount of money that the escrow company would disburse to the mortgage broker and other entities, such as the taxing authority or the insurance company.

After Paget explained the documents to the customers, the customers signed the documents in front of him, and, where appropriate, Paget notarized their signatures. In each case, Paget represented to the customers that signing at their home, or at Coast Security's office, was in lieu of signing at an escrow office. After the customers signed, Paget sent the documents back to Coast Security, which then sent them to the California escrow company for closing. None of the 47 customers involved in the refinancings at issue signed their escrow documents at an office of a licensed escrow company, and neither Coast Security nor Paget was licensed to conduct escrow activity in Oregon.

In May 1995, Eckardt, one of the 47 customers, filed a complaint with the Oregon Department of Justice, claiming that Coast Security had defrauded him in arranging refinancing for his home. The Department of Justice forwarded Eckardt's complaint to the Agency, which charged Coast Security with violating ORS 696.511(1) by acting, through Paget, in the capacity of an escrow agent without a license. After a contested case hearing, the Agency issued a final order, ruling that Coast Security had violated the statute. The Agency imposed a civil penalty of $100 for the first offense and $500 for each of the 46 remaining offenses. The

fines totaled $23,100—the minimum civil penalty allowable under ORS 696.590(1).[2]

Coast Security petitioned for judicial review of the Agency's order, arguing that the Agency erred in concluding that Coast Security had "act[ed] in the capacity of an escrow agent," ORS 696.511(1), when neither Coast Security nor Paget had undertaken any of the activities identified in the statutory definitions of "escrow" and "escrow agent."[3] Specifically, Coast Security argued that, to act in the capacity of an escrow agent, a person must engage in the business of receiving escrows. Coast Security also argued that the Agency's order was not supported by substantial evidence and that Oregon law required the Agency to define the phrase "act in the capacity of an escrow agent" by rule and not through a contested case proceeding.

The Court of Appeals affirmed the Agency's order. The court first concluded that, although acting in the capacity of an escrow agent is not the same as engaging in the business of an escrow agent, Coast Security nonetheless had violated ORS 696.511(1). *Coast Security Mortgage Corp.*, 155 Or App at 583. The Court of Appeals also held that the Agency was not required to promulgate a rule to establish the meaning of the phrase "act in the capacity of an escrow agent" under ORS 696.511(1), but, instead, could do so through a final order in a contested case. *Coast Security Mortgage Corp.*, 155 Or App at 584. Finally, the court held that the Agency's order was based on substantial evidence. *Id.* at 584-85. We allowed Coast Security's petition for review.

---

[2] ORS 696.590 provides, in part:

"(1) Any person who violates ORS 696.511(1) may be required by the Real Estate Commissioner to forfeit and pay to the General Fund of the State Treasury a civil penalty in an amount determined by the commissioner of:

"(a) Not less than $100 nor more than $500 for the first offense of unlicensed professional escrow activity; and

"(b) Not less than $500 nor more than $1,000 for the second and subsequent offenses of unlicensed professional escrow activity."

[3] ORS 696.505(2) and (3) define those terms. We set out those statutory provisions later in this opinion.

We begin with the issue whether Coast Security, through Paget, was acting in the capacity of an escrow agent. ORS 696.511(1) provides:

> "No person directly or indirectly shall engage in or carry on, or purport to engage in or carry on the business or *act in the capacity of an escrow agent* without first obtaining a license as an escrow agent under the provisions of ORS 696.505 to 696.590."

(Emphasis added.) Coast Security contends that the Agency misinterpreted that statutory provision when it concluded that Paget, in behalf of Coast Security, had acted in the capacity of an escrow agent. In response, the Agency argues that, under ORS 696.385(3),[4] the legislature has given the Agency the authority to enforce ORS 696.511(1) and that the Agency was within its authority to conclude that a person who delivers escrow documents to customers, explains those documents to customers, and obtains the customers' signatures is acting in the capacity of an escrow agent.

■    Although the legislature has given the Agency the authority to enforce ORS 696.511(1), "[t]he determination of the meaning of a statute is one of law, ultimately for the court." *Springfield Education Assn. v. School Dist.*, 290 Or 217, 224, 621 P2d 547 (1980). We begin our analysis by considering the appropriate standard for reviewing the Agency's construction of the phrase "act in the capacity of an escrow agent" in ORS 696.511(1).

■    When an agency's interpretation or application of a provision of law is at issue, the reviewing court's standard of review depends upon whether the phrase at issue is an exact term, an inexact term, or a delegative term. *Springfield Education Assn.*, 290 Or at 223. "Exact terms" impart relatively precise meanings, and their applicability in a particular case involves only agency factfinding. *Id.* at 223-24. This

---

[1] ORS 696.385 provides, in part:

"The Real Estate Agency shall have the power to:

"\* \* \* \* \*

"(3) Make and enforce any and all such reasonable rules as shall be deemed necessary to administer and enforce the provisions of, and enforce and discharge the duties defined in, any law with the administration or enforcement of which the agency is charged."

court reviews agency application of "exact terms" for substantial evidence. *Id.* at 224. "Inexact terms" are less precise. Although they embody a complete expression of legislative meaning, that meaning always may not be obvious. *Id.* As to "inexact terms," the task of the agency, and ultimately of the court, is to determine what the legislature intended by using those words. *Id.* "Delegative terms" express incomplete legislative meaning that the agency is authorized to complete. *Id.* at 228. As to "delegative terms," the agency's task is to complete the general legislative policy decision. *Id.* This court reviews the agency decision concerning a "delegative term" to determine whether it is within the range of discretion allowed by the more general policy of the statute. *Id.* at 229.

■ Both parties assert that the phrase "act in the capacity of an escrow agent" in ORS 696.511(1) is a delegative term. We disagree. That phrase does not express incomplete legislative meaning; other parts of the escrow licensing statutes define the terms "escrow" and "escrow agent." Further, interpretation of the meaning of the phrase "act in the capacity of" does not require a legislative policy determination by the Agency. Neither is that phrase so precisely defined as to be an "exact term." Although the terms "escrow" and "escrow agent" are defined by statute, neither ORS 695.511(1) nor any other applicable statute define the phrase "act in the capacity." We conclude that the phrase "act in the capacity of an escrow agent" is an "inexact term" because, although parts of that phrase are defined by statute and embody a complete expression of legislative meaning, the phrase is open to various interpretations.

■ As noted above, we review the Agency's interpretation of inexact terms for consistency with legislative intent. *Springfield Education Assn.*, 290 Or at 224. In this case, doing so requires us to construe ORS 696.511(1) to determine the intended meaning of the phrase "act in the capacity of an escrow agent." To determine the legislature's intent, we first examine the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Context includes other provisions of the same statute and other related statutes. *Id.* at 611. In analyzing text and context, "words of common usage typically should be given their plain, natural, and ordinary meaning." *Id.* If the legislature's

intent is clear from the examination of text and context, then our inquiry is at an end. *Id.*

To determine the legislature's intent here, we divide the phrase, "act in the capacity of an escrow agent," into its essential parts—"act in the capacity" and "escrow agent." As noted, the escrow statutes do not define the word "capacity." The word "capacity" has many definitions; in this case, the relevant dictionary definition provides:

> "4b:   a position, character, or role either duly assigned or assumed without sanction ‹in his [capacity] as legal adviser› ‹served the government in several *capacities*›[.]"

*Webster's Third New Int'l Dictionary*, 330 (unabridged ed 1993) (emphasis added). Therefore, to "act in the capacity of an escrow agent," a person need only act in the role of an escrow agent.

█     As noted, the term "escrow agent" is defined by statute. ORS 696.505(3) provides:

> " 'Escrow agent' means any person who engages in the business of receiving escrows for deposit or delivery and who receives or is promised any fee, commission, salary or other valuable consideration, whether contingent or otherwise, for or in anticipation of performance."

Consequently, to be an escrow agent a person must meet two requirements. First, a person must receive or be promised a "fee, commission, salary or other valuable consideration" for his or her services. Second, those services must include "receiving *escrows* for deposit or delivery * * *." (Emphasis added.)

█     The term "escrow" is defined in ORS 696.505(2), which provides, in part:

> " 'Escrow' means any transaction wherein any written instrument, money, evidence of title to real or personal property or other thing of value is delivered to a person:
>
> "(a)   Not otherwise having any right, title or interest therein for the purpose of effecting the sale, transfer, encumbrance or lease of real or personal property, to be

held by that person as a neutral third party until the happening of a specified event or the performance of a prescribed condition, when it is then to be delivered by such person to a grantee, grantor, promisee, promisor, obligee, obligor, bailee, bailor, or any agent or employee of any of them pursuant to the written instructions of the principals to the transaction[.]"[5]

We conclude that, when the foregoing statutory definition of "escrow" is read together with the statutory definition of "escrow agent" in ORS 696.505(3), a person "acts in the capacity of an escrow agent" when, pursuant to the written instructions of the principals, and for a fee, commission, salary, or other valuable consideration, that person: (1) *receives* any written instrument, money, evidence of title to real or personal property or other thing of value (collectively, "matters in escrow"), to which they have no right, title, or interest therein; (2) *holds* the matters in escrow as a neutral third party until the happening of an event or the performance of a condition specified by the principals; and (3) upon the happening of the event or condition, *delivers* the matters in escrow to a person who has right, title, or interest therein.

In order to compare Paget's actions against the foregoing definition of the phrase "acting in the capacity of an escrow agent," we next turn to an analysis of the specific activities included in receiving, holding, and delivering matters in escrow. We begin with the concept of receipt.

Under ORS 696.581(1),[6] escrow agents may not receive matters in escrow without written instructions from the principals to the transaction or a written agreement between the principals. Nothing in the statutes requires the escrow agent to receive matters in escrow in a face-to-face exchange with the principals. The principals, therefore, need

---

[5] ORS 696.505(4) defines a "principal" as, among other things, "[t]he borrower in an escrow transaction involving the refinancing of real or personal property * * *."

[6] ORS 696.581(1) provides:

"An escrow agent may not accept funds, property or documents in any escrow transaction without dated, written escrow instructions from the principals to the transaction or a dated executed agreement in writing between the principals to the transaction."

not prepare, review, or sign the escrow instructions or other agreement in the physical presence of an escrow agent or at a licensed escrow office. Neither does the statute require the escrow agent to answer any questions from the principals about the instructions or settlement statement. All that the escrow agent must do is accept the instructions at the same time when the escrow agent receives any funds, instruments, or property. In short, the escrow agent operates as a depository, in which the principals deposit matters in escrow, together with their instructions regarding those matters.

■ The escrow statutes contemplate that, in some instances, the principals may deposit a written agreement with the escrow agent rather than escrow instructions. In those instances, ORS 696.581(3) allows the escrow agent to prepare the instructions. If the escrow agent does so, then the instructions must contain the following warning:

> "It is understood by the parties signing the above or attached instructions that the instructions are the complete instructions between this firm as an escrow agent and you as a principal to the escrow transaction. These instructions may not include all the terms of the agreement which is the subject of this escrow. Read these instructions carefully, and do not sign them unless they are acceptable to you."

ORS 696.581(3). Although the legislature requires that warning when the escrow agent prepares the instructions, nothing in the statutes mandates that the escrow agent be present when the principals review and sign the escrow instructions and other closing documents. Further, that warning does not require the escrow agent to assist the principals in understanding the escrow instructions prepared by the escrow agent by explaining their meaning. Indeed, the law otherwise forbids an escrow agent from drafting, selecting, or giving advice regarding real estate documents whenever such activities require the exercise of informed or trained discretion. *State Bar v. Security Escrows, Inc.*, 233 Or 80, 89, 377 P2d 334 (1962).

■ We next consider the concept of holding matters in escrow. Upon receiving the matters in escrow and the principals' written instructions or agreement, the escrow agent holds the matters in escrow under ORS 696.505(2)(a) "as a

neutral third party until the happening of a specified event or the performance of a prescribed condition," as outlined in the escrow instructions. The specific condition or event can require the escrow agent to hold the matters in escrow until notified to deliver them to another escrow agent, or upon a condition that, once satisfied, requires the escrow agent to disburse the funds to other persons or entities.

■ Finally, as to the concept of delivery, when an escrow agent delivers matters in escrow, the escrow agent must do so pursuant to the escrow instructions. *See* ORS 696.581(2) ("[a]n escrow agent may not close an escrow or disburse any funds or property in an escrow without obtaining dated, separate escrow instructions in writing from the principals"). The delivery function ultimately is dependant upon the "receipt" and "hold" functions, because, under ORS 696.581(2), the escrow agent must have received funds and documents from the lender and the principal before disbursing matters in escrow.

To summarize, the receipt of matters in escrow involves accepting the matters in escrow, together with either signed written instructions from the principals directing how the escrow agent is to hold and deliver them, or a written agreement from the principals. No law requires the principals to visit a licensed escrow agent office to sign the closing documents or to meet with the principals in person to accept the property. Rather, mailing the closing documents to the escrow agent is sufficient. Further, an escrow agent may not draft documents when informed or trained discretion is required. However, the agent may prepare escrow instructions pursuant to the principals' agreement, if the principals do not wish to do so themselves. Neither is the escrow agent entitled to advise the principals concerning the documents, including the escrow instructions, other than answering questions for which no informed or trained discretion is required. Finally, the escrow agent must deliver the matters in escrow upon the happening of the particular event or performance of a specified condition that is set out in the escrow instructions.

■ With the foregoing in mind, we turn to the determination whether Coast Security, through Paget's acts in the

transactions at issue, engaged in the acts of receiving, holding, and delivering matters in escrow, thereby "act[ing] in the capacity of an escrow agent" under ORS 696.511(1). As noted, Coast Security provided Paget with prepared loan documents from the loan companies and prepared escrow instructions and settlement statements from the California escrow companies. Neither Paget, nor Coast Security, were asked by the principals to prepare those instructions, or to hold the other documents pursuant to any instructions. Paget presented the documents to the customers,[7] notarized their signatures,[8] and forwarded the documents to Coast Security, which then sent the documents to the California escrow companies. Here again, Paget was not acting pursuant to written escrow instructions from the principals; neither was he required to wait for a specific event or condition to forward the documents to Coast Security. As to those activities, it is apparent that Paget acted merely as a messenger between the escrow companies and the principals, and, therefore, cannot be said to have received, held, or delivered matters in escrow pursuant to the principals' instructions.

The Agency argues that, even if Paget did not receive, hold, or deliver matters in escrow, he acted in the capacity of an escrow agent because he explained to Coast Security's customers the contents of the closing documents, which included escrow instructions, settlement statements, and loan documents. We disagree, for two reasons. First, as we already have noted, the act of explaining the nature and terms of certain documents can fall outside the scope of an escrow agent's duties, when such an explanation requires informed or trained discretion. *See Security Escrows, Inc.*, 233 Or at 89 (so stating). Second, if Paget's explanations did not require informed or trained discretion and therefore were the type in which an escrow agent may engage, those explanations alone could not have transformed Paget into an escrow agent. That is so because, as already explained, acting in the capacity of an escrow agent requires a person to receive, hold, and deliver matters in escrow pursuant to

---

[7] Neither party asserts that a person who simply presents closing documents to his or her customers must have an escrow agent license.

[8] Neither party asserts that a notary public must have an escrow agent license to notarize closing documents.

escrow instructions for consideration. The act of explaining documents alone does not constitute receiving matters in escrow or holding the matters until the occurrence of some specified event or condition.[9]

In summary, we conclude that the escrow statutes, taken as a whole, do not support the Agency's conclusion that Coast Security's actions, through its employee, Paget, were those of an escrow agent. Accordingly, we hold that Coast Security did not "act in the capacity of an escrow agent" under ORS 696.511(1) and, therefore, was not required to obtain an escrow agent license for its activities. In light of that holding under ORS 696.511(1), we need not address the other issues raised by Coast Security on review.

The decision of the Court of Appeals and the order of the Real Estate Agency are reversed.

---

[9] In contending that Paget acted in the capacity of an escrow agent, the Agency also relied upon the fact that Paget told the customers that the signing at home or in Coast Security's office was in lieu of a closing in an escrow office. That fact is irrelevant, particularly in light of our determination that an escrow agent need not be present when the principal executes the closing documents.