Argued and submitted March 8, 2005, decision of Court of Appeals affirmed; order of Fair Dismissal Appeals Board reversed, and case remanded to Fair Dismissal Appeals Board for further proceedings September 28, reconsideration denied November 21, 2006

## Karin BERGERSON,
*Petitioner on Review,*

*v.*

## SALEM-KEIZER SCHOOL DISTRICT,
*Respondent on Review.*

## (FDA-02-2; CA A118518; SC S51711)

144 P3d 918

Thomas K. Doyle, Bennett, Hartman, Morris & Kaplan LLP, Portland, argued the cause for petitioner on review. With him on the brief was Aruna A. Masih.

Nancy J. Hungerford, The Hungerford Law Firm, Oregon City, argued the cause for respondent on review. With her on the brief was Jennifer L. Hungerford.

Before Carson,** Chief Justice, and Gillette, Durham, Riggs, De Muniz,*** and Balmer, Justices.****

CARSON, J.

---

** Chief Justice at the time of argument.
*** Chief Justice at the time the decision was issued.
**** Kistler, J., did not participate in the consideration or decision of this case.

402-b

**CARSON, J.**

The issues in this administrative law case are whether the Fair Dismissal Appeals Board (FDAB) correctly interpreted and applied the terms "unreasonable" and "clearly an excessive remedy" as they are used in ORS 342.905 and whether the Court of Appeals applied the correct standard of review to the FDAB's decision. Those issues arose out of a decision by the school board of the Salem-Keizer School District (the district) to dismiss a teacher (petitioner) on grounds of "immorality" and "neglect of duty" under ORS 342.865(1)(b) and (d). The FDAB reversed the school board's decision, ordering the district to reinstate petitioner. The district appealed to the Court of Appeals. The Court of Appeals reversed the FDAB's decision and remanded the case to the FDAB for further proceedings. *Bergerson v. Salem-Keizer School District*, 194 Or App 301, 325-26, 95 P3d 215 (2004). Petitioner sought this court's review. We allowed review and now affirm the decision of the Court of Appeals.

We take the facts from the Court of Appeals decision and from the record. Petitioner was employed as a contract school teacher by the district. She had taught for the district for approximately 19 years and had not been subject to any prior disciplinary action. In 1999, petitioner began having marital problems and other family difficulties. Eventually, her husband moved out of the family home to live with another woman and initiated marital dissolution proceedings.

On January 6, 2001, petitioner drove to meet her estranged husband at his girlfriend's house. Petitioner and her husband had an argument, and petitioner returned to her vehicle, where she attempted to kill herself by taking various prescription medications. She then started her vehicle and rammed it into her husband's vehicle, which was parked in the driveway. The impact of the collision pushed her husband's vehicle into his girlfriend's house, causing significant damage to the house.

Petitioner, who was injured in the collision, was taken to the hospital. Afterwards, she voluntarily committed herself for psychiatric treatment. Two local newspapers

reported the incident, and the district placed petitioner on administrative leave.

The district attorney charged petitioner with four crimes related to the incident, including criminal mischief. As part of a plea bargain, petitioner pleaded no contest to the criminal mischief charge. In return, the other charges were dropped. The plea bargain provided that, if petitioner successfully completed probation, the case against her would be dismissed and she would have no criminal record at the end of her probation term. However, the plea bargain also provided that, if petitioner violated the conditions of her probation, the court automatically would sentence her on her plea of no contest.

The parents of several students at petitioner's school and some staff members at the school informed the district that they did not want petitioner to return to teaching. At first, the district transferred petitioner to another school. Then, in November 2001, the district superintendent recommended to the school board that petitioner be dismissed. The district notified petitioner of the grounds for the superintendent's recommendation and conducted an informal hearing before the school board. The school board unanimously decided to dismiss petitioner.

Petitioner appealed her dismissal to the FDAB. At her hearing before an FDAB panel (the panel),[1] a psychologist who had examined petitioner testified that her conduct in January 2001 had represented an isolated incident and was unlikely to reoccur. In addition, petitioner's treating psychiatrist submitted a written opinion that petitioner was "emotionally and mentally fit to return to * * * teaching[.]" The panel also heard testimony that, in the past, two other teachers had attempted suicide and successfully returned to teaching for the district. Finally, the panel considered evidence that the district only issued a letter of warning to another teacher who had been accused of domestic violence and who had entered into a diversion agreement on a charge of harassment.

---

[1] The FDAB hears appeals by a panel of three of its members. *See* ORS 342.905(2)(a) (so providing).

ORS 342.905(6) provides, in part:

"[When a dismissed contract teacher appeals to the FDAB, the FDAB] panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal * * * are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing * * *, are adequate to justify the statutory grounds cited. * * * The panel shall not reverse the dismissal * * * if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal * * * was unreasonable, arbitrary or clearly an excessive remedy."

Following the hearing, the panel found that the following facts, upon which the school board relied, in part, in dismissing petitioner, were true and substantiated: (1) petitioner intentionally drove her vehicle into her husband's vehicle; (2) petitioner pleaded no contest to a charge of criminal mischief; (3) petitioner suffered injuries in the crash and was unable to work for several days; (4) articles describing petitioner's conduct appeared in two local newspapers; and (5) parents expressed concern about petitioner's return to teaching because of the January 2001 incident. However, the panel found that the following facts were not true and substantiated: (1) petitioner drove her vehicle at a high rate of speed through a residential neighborhood before crashing into her husband's vehicle; (2) petitioner "had difficulty or was otherwise 'compromised' in her 'effectiveness as a teacher'" during the two years preceding the January 2001 incident; (3) petitioner extensively discussed her personal problems with staff or other teachers and "required an unusual amount of coverage from other teachers"; (4) petitioner failed to obtain "effective mental health treatment" or request leave; (5) petitioner stated that her conduct during the January 2001 incident was "normal" or "acceptable" and was none of the district's business; and (6) "parents had specific facts about which to be concerned regarding [petitioner's] behavior 'prior to [the January 2001] incident[.]'"

Based upon the facts that it found to be true and substantiated, the panel reasoned that the school board had

established two of the statutorily prescribed grounds for dismissal, "immorality" and "neglect of duty."[2] First, the panel concluded that petitioner's conduct constituted "neglect of duty" because it adversely had affected "positive relations with parents and the community" and adversely had affected the "dignity of the profession." Second, the panel concluded that petitioner's conduct was "immoral" in that it had harmed innocent third parties and had violated community standards as expressed in the criminal law.[3] Furthermore, the panel held that the school board's decision to dismiss petitioner was not "arbitrary" because it was based upon reason or fact, and not "preference, bias, prejudice, or convenience[.]"[4]

However, the panel further concluded that, although not "arbitrary," the school board's decision to dismiss petitioner was "unreasonable." At the outset, the panel interpreted the term "unreasonable," as it is used in ORS 342.905(6), to mean "lacking justification in fact or circumstance." The panel then concluded that the school board's decision to dismiss petitioner fit within that interpretation of the term "unreasonable" for three reasons. First, the panel asserted that petitioner's reassignment to a new school had addressed parents' concerns about petitioner continuing to teach their children. Second, the panel claimed that the school board "could" have considered its past success in continuing to employ other teachers who had attempted suicide. Third, the panel maintained that the school board "could" have considered and compared the disciplinary action taken against another teacher who only had received a letter of warning after being charged with domestic violence.

---

[2] ORS 342.865(1) allows school districts to dismiss a teacher on those grounds, among others.

[3] Before this court, neither petitioner nor the district disputes the panel's determination as to the facts that it found to be true and substantiated, or its conclusion that those facts constituted statutory bases for dismissal for "neglect of duty" and "immorality."

[4] Neither petitioner nor the district appealed the panel's interpretation of the term "arbitrary" or its application of that term to the facts of this case. Therefore, the proper interpretation and application of the term "arbitrary," as that term is used in ORS 342.905(6), is not before us.

Although failing to interpret explicitly the term "clearly an excessive remedy," as it is used in ORS 342.905(6), the panel also concluded that the school board's decision to dismiss petitioner was "clearly an excessive remedy." To justify that conclusion, the panel stated that the school board had relied upon facts that were untrue and unsubstantiated (specifically, that petitioner had a long-term performance problem) and that the school board had over-reacted to an isolated incident. The panel also suggested that the school board had misunderstood the legal consequences of petitioner's no contest plea and had treated petitioner's criminal conduct as more serious than warranted.

Because the panel found that the school board's decision to dismiss petitioner was "unreasonable" and "clearly an excessive remedy," even though the evidence established two of the statutory grounds for dismissal, the panel reversed the school board's decision to dismiss petitioner and ordered her reinstated.

Both petitioner and the district sought judicial review of the panel's decision in the Court of Appeals. On judicial review, the district claimed that the panel erred in concluding that petitioner's dismissal was "unreasonable" and "clearly an excessive remedy." The district also assigned as error the panel's factual findings and the panel's failure to remand the case for reconsideration by the school board. For her part, petitioner assigned error to the panel's findings that she acted intentionally in crashing into her husband's vehicle, its conclusion that she had neglected her duty, and its interpretation of "immorality."

Although it approved of the panel's interpretation that the term "unreasonable" meant "lacking justification in fact or circumstance[,]" the Court of Appeals did not agree with the panel's application of that interpretation to the facts of the case. *Bergerson*, 194 Or App at 313. Specifically, the Court of Appeals held that the panel erred in concluding that petitioner's dismissal had been "unreasonable" because the panel had relied on factually distinguishable cases and had failed to explain its reasoning adequately. *Id.* at 313-15. The Court of Appeals further held that the panel erred in concluding that petitioner's dismissal had been "clearly an excessive

remedy" because the panel had failed to interpret the term "clearly an excessive remedy" and had failed to justify its conclusion adequately. *Id.* at 315-17. Therefore, the Court of Appeals reversed the panel's determination that petitioner's dismissal had been "unreasonable" and "clearly an excessive remedy" and remanded the case to the FDAB for further proceedings. *Id.* at 325-26. The Court of Appeals rejected the district's and petitioner's remaining assignments of error. *Id.* at 325. We allowed petitioner's petition for review.

Before this court, petitioner first raises the question of what standard of review applies to school board dismissal decisions. Petitioner additionally questions whether the courts or the FDAB should interpret the statutory terms of ORS 342.905. She argues that the standard articulated in an earlier case that construed ORS 342.905, *Ross v. Springfield School Dist. No. 19*, 294 Or 357, 363-64, 657 P2d 188 (1982), no longer applies because this court decided that case prior to deciding its germinal case on statutory construction, *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Petitioner also asserts that, even if the *Ross* standard still applies, it does not apply equally to the terms "unreasonable," "arbitrary," and "clearly an excessive remedy," as they are used in ORS 342.905(6). Petitioner further maintains that the FDAB correctly interpreted the terms "unreasonable" and "clearly an excessive remedy," and that the Court of Appeals improperly substituted its judgment for that of the FDAB. We turn first to our standard of review and then proceed to consider the FDAB's interpretation and application of the terms in question.

Petitioner is a contract teacher. Given that status, she may be dismissed only upon certain specified grounds, including:

"(b) Immorality; [or]

"* * * * *

"(d) Neglect of duty, including duties specified by written rule[.]"

ORS 342.865(1). "Authority to dismiss * * * a contract teacher is vested in the district school board subject to" the FDAB appeal process. ORS 342.895(2).

■ Judicial review of final orders of the FDAB is governed by the Oregon Administrative Procedures Act (APA). *See* ORS 342.905(9) (so stating). On judicial review under the APA,

"(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law[.]"

ORS 183.482(8).

Here, in response to petitioner's appeal, the panel found that some, but not all, the facts relied upon by the school board were true and substantiated and that those true and substantiated facts, standing alone, were adequate to justify the statutory grounds of "immorality" and "neglect of duty." However, under the third step of its review function, the panel concluded that petitioner's dismissal was "unreasonable" and "clearly an excessive remedy."

Somewhat as an aside, the district argued before the Court of Appeals that the FDAB had erred in failing to remand petitioner's case back to the school board upon the finding that some of the facts relied upon by the school board were not true and substantiated. The district asserted that ORS 342.905 required remand to the school board any time that the FDAB found that some facts were not true or substantiated. The Court of Appeals rejected that argument, holding that the FDAB has no statutory authority to remand a case back to the school board if the FDAB determines that some of the facts relied upon by the school district were not true. *Bergerson*, 194 Or App at 322-23. In reaching that conclusion, the Court of Appeals examined ORS 342.905 and noted that "the statute provides two options: reversal of the

dismissal and reinstatement, on the one hand, and affirmance of the dismissal, on the other. The statute nowhere uses the term 'remand.' " *Id.* at 321. The Court of Appeals further observed that "nothing in the text of ORS 342.905 requires or allows remand to the school board on the ground that the school board might not have imposed the sanction of dismissal based on the more limited facts that FDAB finds to be true." *Id.* at 322. Finally, the Court of Appeals stated:

> "We agree with respondent that FDAB's reversal authority would be hollow indeed were FDAB limited to remanding each time it found that some of the facts relied upon by a school board were untrue or unsubstantiated even if the remaining facts supported the statutory grounds for dismissal. The legislature has not provided such a process. * * * Rather, where at least some of the facts are true and substantiated and support the cited statutory grounds for dismissal, subsection (6) authorizes FDAB to determine whether to affirm or reverse a school board based on whether the dismissal was unreasonable, arbitrary, or clearly an excessive remedy. That is the only statutory 'consequence' provided when FDAB finds that some facts are proven and some facts are not proven."

*Id.* (internal citation and footnote omitted).

■ We agree with that analysis and conclusion. In addition to the lack of express statutory authority to remand a case to the school board, other factors support the conclusion that the FDAB has no remand authority. First, remand for further factfinding would be inconsistent with the FDAB's role as primary factfinder. In *Ross*, 294 Or at 361-62, this court explained:

> "No hearing is required at the school board level. The contested case hearing conducted by the FDAB presents a dismissed teacher with the first opportunity to rebut the facts and charges brought by the district superintendent and approved by the school board. One of the FDAB's 'review' functions is that of primary fact-finder."

Second, ORS 342.905(6) directs the FDAB to "consider whether [the facts found to be true], in light of all the circumstances and additional facts developed at the hearing * * *, are adequate to justify the statutory grounds [for dismissal] cited." That statute thus expressly grants to the FDAB the

function of deciding whether a ground for dismissal was satisfied. *See Ross*, 294 Or at 362-63 (stating FDAB determines for itself whether facts found to be true constitute ground for dismissal). Finally, under the FDAB's third function, it is required to determine whether the school board's dismissal decision was unreasonable, arbitrary, or clearly an excessive remedy. Each of those standards clearly authorizes the FDAB to make the final, binding choice without a remand to the school board. Therefore, we agree with the Court of Appeals that the FDAB is not required (and, indeed, is not even authorized) to remand a case back to the school board upon a finding that some of the facts that the school board found were not true and substantiated.

 Returning to the primary issue, determining the meaning of a statute is a question of law, "ultimately for the court." *Springfield Education Assn. v. School Dist.*, 290 Or 217, 224, 621 P2d 547 (1980). "When an agency's interpretation or application of a provision of law is at issue, the reviewing court's standard of review depends upon whether the phrase at issue is an exact term, an inexact term, or a delegative term." *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 353, 15 P3d 29 (2000). Exact terms "impart relatively precise meaning[s]," and "[t]heir applicability in any particular case depends upon agency factfinding." *Springfield Education Assn.*, 290 Or at 223-24. An appellate court "reviews agency application of exact terms for substantial evidence." *Coast Security Mortgage Corp.*, 331 Or at 354 (internal quotation marks omitted). Inexact terms express a complete legislative meaning but with less precision. *Id.* at 354. An appellate court must review an agency's interpretation of inexact terms to ensure that it is consistent with the legislature's intent. *Id.* "Delegative terms express incomplete legislative meaning that the agency is authorized to complete." *Id.* (internal quotation marks omitted). An appellate court reviews an agency's interpretation of delegative terms to ensure that the interpretation is "within the range of discretion allowed by the more general policy of the statute." *Id.*

As noted earlier, the statute in question here, ORS 342.905(6), provides, in part:

"[When a dismissed contract teacher appeals to the FDAB, the FDAB] panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal * * * are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing * * *, are adequate to justify the statutory grounds cited. * * * The panel shall not reverse the dismissal * * * if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal * * * was unreasonable, arbitrary or clearly an excessive remedy."

As we read the statute, the FDAB review function can be broken down into three steps. First, the panel determines whether the facts upon which the school board relied are true and substantiated. Second, the panel determines whether the facts found to be true and substantiated constitute a statutory basis for dismissal.[5] Third, even if the facts constitute a statutory basis for dismissal, the panel may reverse the school board's dismissal decision if the decision nonetheless was "unreasonable, arbitrary[,] or clearly an excessive remedy."

The Court of Appeals concluded that the panel erred in interpreting the term "clearly an excessive remedy" and in applying the terms "unreasonable" and "clearly an excessive remedy." *Bergerson*, 194 Or App at 313-18. Petitioner disputes that conclusion. Thus, this case turns on the interpretation of the terms "unreasonable" and "clearly an excessive remedy," as those terms are used in ORS 342.905(6), and on the application of those terms to the facts of this case.

Both parties contend that the terms "unreasonable" and "clearly an excessive remedy" are delegative terms, and we agree. As explained in *Coast Security Mortgage Corp.*, 331 Or at 354, "[d]elegative terms express incomplete legislative

_____

[5] If the "panel finds that the facts relied on to support the recommendation of the district superintendent are untrue or unsubstantiated, or if true and substantiated, are not adequate to justify the statutory grounds cited as reason for the dismissal * * *, and so notifies the contract teacher, the district superintendent, the district school board and the Superintendent of Public Instruction, the teacher shall be reinstated[.]" ORS 342.905(7)(a).

meaning that the agency is authorized to complete." (Internal quotation marks omitted.) Here, ORS 342.905(6) defines neither term, and both terms are open to multiple interpretations. *See id.* at 354 (examining whether term is defined in another part of statute and whether term is open to various interpretations to determine if it is delegative); *cf. J. R. Simplot Co. v. Dept. of Agriculture*, 340 Or 188, 197, 131 P3d 162 (2006) (concluding that term was not delegative because surrounding text limited meaning of term). In addition, the term "unreasonable" is among the examples of delegative terms this court has noted previously. *See Springfield Education Assn.*, 290 Or at 228 (describing the terms "good cause," "fair," "unfair," "undue," and "unreasonable," as delegative). We conclude that the terms "unreasonable" and "clearly an excessive remedy" express incomplete legislative meaning that the FDAB is authorized to complete; therefore, they are delegative.

■ As noted above, we review the agency's interpretation of delegative terms to determine whether it is within the range of discretion allowed by the more general policy of the statute. Determining the general policy of a statute is a matter of statutory construction controlled by the *PGE* framework. *See Lombardo v. Warner*, 340 Or 264, 270-72, 132 P3d 22 (2006) (generally following that methodology). When interpreting a statute, this court must give effect to the legislature's intent. *PGE*, 317 Or at 610. To do so, we begin our analysis by considering the text and context of the statute in question. *Id.* at 610-11. We give "words of common usage their plain, natural, and ordinary meaning[s]," and we give words that have well-defined legal meanings those meanings. *Norden v. Water Resources Dept.*, 329 Or 641, 645, 996 P2d 958 (2000). As part of that first level of analysis, this court considers its prior interpretations of the statute. *State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998). If the statute's meaning is clear from an analysis of its text and context, we proceed no further.[6] *PGE*, 317 Or at 611.

---

[6] We note that ORS 174.020(3) provides:

"A court may limit its consideration of legislative history to the information that the parties provide to the court. A court shall give the weight to the legislative history that the court considers to be appropriate."

The terms "unreasonable," "arbitrary," and "clearly an excessive remedy," as they are used in ORS 342.905(6), define the FDAB's review authority. Our task here is to determine the range of discretion delegated to the FDAB through the use of the statutory terms "unreasonable" and "clearly an excessive remedy," and to evaluate whether the FDAB's action in applying those terms was within that range of discretion granted.[7]

■ We begin with the term "unreasonable." ORS 342.905(6) provides no definition of that term, and nothing indicates that the legislature intended it to have a special legal meaning. Thus, we look to its common dictionary definition. *See Massee and Massee*, 328 Or 195, 202, 970 P2d 1203 (1999) (using common dictionary definition of term where no definition was provided in statute). "Unreasonable" is defined as "not governed by or acting according to reason * * * exceeding the bounds of reason[.]" *Webster's Third New Int'l Dictionary* 2507 (unabridged ed 2002). "Reason," in turn, is defined as "[a] statement offered as * * * a justification of an act[;]" "a rational ground or motive[;]" or "a sufficient ground of explanation or of logical defense[.]" *Id.* at 1891. Thus, in the present context, "unreasonable" means acting without a rational or logical justification for that particular action. We are aware of no relevant context that suggests a contrary or different interpretation. *See Western Generation Agency v. Dept. of Rev.*, 327 Or 327, 332-33, 959 P2d 80 (1998) (relying upon dictionary definition where statute does not define term and context does not alter dictionary definition of term). Therefore, a school board's dismissal of a teacher is "unreasonable" if the dismissal has no rational or logical justification. Conversely, dismissal is reasonable if it is a rational action and it is logically justified.

■ ■ Following petitioner's FDAB appeal hearing, the panel interpreted the term "unreasonable" to mean "lacking justification in fact or circumstance." That interpretation is

---

[7] We reject without further discussion petitioner's contention that the FDAB must disregard any cases decided by this court if they predate our decision in *PGE*. *See, e.g., State v. Reid*, 319 Or 65, 68-69, 872 P2d 416 (1994) (citing and relying upon pre-*PGE* case law); *State ex rel Huddleston v. Sawyer*, 324 Or 597, 608, 932 P2d 1145 (1997) (same).

similar to the one that we have set out above and is within the range of discretion that ORS 342.905(6) grants. However, we agree with the Court of Appeals that the panel erred in applying its interpretation to the facts of this case. To conclude that a dismissal is "lacking justification in fact or circumstance" and, thus, is "unreasonable," the FDAB must articulate a rational connection between the facts and the legal conclusions that it draws from them. *Ross*, 294 Or at 370. "[A]gencies * * * are required to demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts." *Drew v. PSRB*, 322 Or 491, 500, 909 P2d 1211 (1996) (emphasis in original). "[An] agency's failure to connect permissibly its facts and its holding is fatal to the agency's order." *Id.* at 500-01.

■ Here, the panel held that petitioner's dismissal was "lacking justification in fact or circumstance" and, thus, "unreasonable" because her reassignment had addressed parental concerns about her, because the school board "*could*" have considered "its prior success with teachers engaging in suicide attempts" and because the school board "*could*" have considered "that another teacher with at least the same, if not a stronger criminal outcome, was given a [l]etter of [w]arning." (Emphasis added.) In its order, the panel failed to provide a rational connection between the facts of petitioner's case and the panel's final conclusion that the school board's dismissal decision had no justification. The panel should have explained how the facts of petitioner's conduct and of the school board's response rationally supported the panel's determination that the school board acted unreasonably.

■ The panel's decision fails to provide that essential linkage in several respects. First, the district's initial reassignment of petitioner does not make the school board's later dismissal decision necessarily unreasonable, as the school board is not bound by the district's initial reassignment choice. *See* ORS 342.895(2) (granting school board authority to dismiss teacher). Although petitioner's initial reassignment may have resolved some of the parent concerns about petitioner, the school board may have felt, for example, that

the reassignment did not address petitioner's criminal conduct. Additionally, mere suggestions of what the school board *could* have done do not address the limits on what a school board reasonably might decide to do instead.

■ Neither does exclusively focusing on other possible courses of action that the school board chose not to pursue necessarily demonstrate that the school board's actual chosen course was irrational or not logically justified. The panel never addressed the facts on which the school board did rely in dismissing petitioner, such as her suicide attempt, her criminal conduct, and the related publicity, and did not explain how those facts relate to the criteria in ORS 342.905(6). Furthermore, the panel did not explain how the prior school board decisions that the panel cited supported its conclusion that the school board had acted unreasonably in dismissing petitioner in this case. Although the panel may look to other board actions, the board's choice in one instance does not necessarily constrain the board's discretion thereafter.

Based upon the foregoing considerations, we conclude that the panel failed to articulate a rational connection between the facts that it found and the legal conclusions that it drew from them. Thus, remand to the FDAB is necessary for an FDAB panel rationally to apply its interpretation of the term "unreasonable" to the facts of this case.

We note also, that, in finding that petitioner's dismissal was "clearly an excessive remedy," the FDAB failed to complete the general policy decision that the term "clearly an excessive remedy" represents and apply it to the facts of this case. The FDAB had a duty to complete the legislative meaning of the delegative term "clearly an excessive remedy" consistently with the general policy of ORS 342.905(6). *See Coast Security Mortgage Corp.*, 331 Or at 353-54 (so illustrating). It is impossible for this court to say whether the FDAB properly applied the term "clearly an excessive remedy" when the FDAB order provided no explanation of its application of that term upon which this court can make its assessment. For us to perform our review function, the FDAB must have performed its own function first. Here, it did not. Consequently,

remand is necessary to allow the FDAB to complete the legislative meaning of the term "clearly an excessive remedy" and to apply that legislative policy rationally to the facts of this case.

Based upon the foregoing analysis, we conclude that we must "[r]emand [this] case to the agency for further action under a correct interpretation of the * * * law." ORS 183.482(8)(a)(B).

The decision of the Court of Appeals is affirmed. The order of the Fair Dismissal Appeals Board is reversed, and the case is remanded to the Fair Dismissal Appeals Board for further proceedings.