Argued and submitted May 30, 2001, affirmed October 2, 2002

Rick L. HALE,
Robert Hoskins, and Darlene Hoskins,
*Petitioners,*

*v.*

WATER RESOURCES DEPARTMENT
of the State of Oregon,
and Water Resources Commission
of the State of Oregon,
*Respondents.*

CC 8; A107303

55 P3d 497

Laura A. Schroeder argued the cause for petitioners. With her on the brief were Justin D. Gericke and Schroeder Law Offices, P.C.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondents. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Landau* and Kistler, Judges.

LANDAU, J.

---

* Landau, J., *vice* Armstrong, J.

**LANDAU, J.**

Petitioners seek review of a final order of the Water Resources Department (department) denying their application to include their lands within the boundaries of a certificate for the use of irrigation water from the Umatilla River. We affirm.

We take the following facts from the department's findings. In 1965, the Stanfield Irrigation District (district) applied to the department for a permit to divert water from the Umatilla River to irrigate approximately 13,000 acres. In response to the application, the department issued Permit 30789. That permit established a deadline of December 31, 1988, to put the water to beneficial use as irrigation water, which was to be followed by a final proof survey and the issuance of a certificate of water rights.

The permit included two sections of land not within the boundaries of the district itself. The first, known as "Section 8," was owned by Bob Hoskins and leased by Ralph and Albert Seibel. The second, known as "Section 9," the Seibel brothers owned.

The Seibel brothers first applied water on the Section 8 and Section 9 lands under Permit 30789 in 1974. They continued to irrigate the Section 9 land through 1981 and the Section 8 land through 1983. Albert Seibel suffered a heart attack, and it became difficult for the brothers to continue their farming operation. They gave up their lease of Section 8 and put Section 9 up for sale.

The Seibel brothers advised the district of their intention to discontinue development of Permit 30789 as to Section 9. The district replied that it had no objection to the cancellation of their permit. Meanwhile, since Section 8 reverted to Hoskins, water has never been applied under Permit 30789.

The final proof survey for Permit 30789 was conducted in 1989. The survey concluded that neither Section 8 nor Section 9 was being irrigated. In 1991, the Seibel brothers sold Section 9 to Rick Hale. Section 8 remains in the Hoskins family.

In 1997, the department issued a proposed certificate of water rights that did not include either Section 8 or Section 9. Petitioners Robert and Darlene Hoskins and Rick Hale—the current owners of Sections 8 and 9, respectively—protested the proposed certificate, requesting that Sections 8 and 9 be included. The department refused the request on the ground that

> "satisfactory proof has not been made to allow the Department to determine that appropriation of water to beneficial use under the terms of the permit has been accomplished for these lands."

Petitioners requested a hearing. At the hearing, they argued that, by putting water to beneficial use in 1974, they or their predecessors had accomplished all that the law requires to perfect their water rights. In a proposed order, the hearing officer disagreed, concluding that the requirement of putting the water to beneficial use includes a requirement of continuity, which in this case had been broken by the cessation of use in the early 1980s. The director of the department adopted the proposed order and issued the certificate without including either Section 8 or Section 9.

■      On review, petitioners first argue that the department erred in concluding that they had failed to perfect their water rights. According to petitioners, "perfection" is a term of art that refers not to an ongoing activity but to a single incident—however brief—of putting the water to a beneficial use. The department contends that, under the terms of the applicable statutes, the determination whether a water right has been "perfected" has been delegated to its discretion and that its decision to require continuity of use falls well within the reasonable exercise of that discretion. We agree with the department.

ORS 537.110 provides that "[a]ll water within the state from all sources of water supply belongs to the public." ORS 537.120 then provides that all waters within the state "may be appropriated for beneficial use, as provided in the Water Rights Act," so long as such use does not impair the vested right of any other person to use water within the state. ORS 537.130(2) imposes an additional qualification on the right to use water within the state: Subject to exceptions not

pertinent to this case, "no person shall use, store or divert any waters until after the department issues a permit to appropriate the waters." *Id.*

To obtain a permit requires an application, upon receipt of which the department will determine, among other things, whether the proposed use is prohibited by law. ORS 537.140; ORS 537.150. A person whose application for a permit has been granted may then apply for a water rights certificate that essentially vests in the applicant a permanent water right. ORS 537.250. Water rights certificates may be granted only

> "[a]fter the Water Resources Department has received a request for issuance of a water right certificate accompanied by the survey required under ORS 537.230(3) that shows, to the satisfaction of the department, that an appropriation has been perfected in accordance with the provisions of the Water Rights Act * * *."

ORS 537.250(1). The survey referred to in ORS 537.230(3) must be performed by a certified water rights examiner; the examiner is required to "survey the appropriation." Once a certificate has been issued, the rights granted in it continue "so long as the water shall be applied to a beneficial use" in accordance with the terms of the certificate, subject to loss by nonuse or cancellation. ORS 537.250(3).

In this case, the parties dispute whether the department correctly concluded that petitioners had not "perfected" their water rights within the meaning of ORS 537.250(1). In *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 353-54, 15 P3d 29 (2000), the Supreme Court described the proper analysis of an administrative agency's interpretation or application of a statute that the agency is authorized to enforce, in that case, the Real Estate Agency's application of ORS 696.511:

> "Although the legislature has given the Agency the authority to enforce ORS 696.511(1), '[t]he determination of the meaning of a statute is one of law, ultimately for the court.' *Springfield Education Assn. v. School Dist.*, 290 Or 217, 224, 621 P2d 547 (1980). We begin our analysis by considering the appropriate standard for reviewing the Agency's construction * * *.

"When an agency's interpretation or application of a provision of law is at issue, the reviewing court's standard of review depends upon whether the phrase at issue is an exact term, an inexact term, or a delegative term. *Springfield Education Assn.*, 290 Or at 223. 'Exact terms' impart relatively precise meanings, and their applicability in a particular case involves only agency factfinding. *Id.* at 223-24. This court reviews agency application of 'exact terms' for substantial evidence. *Id.* at 224. 'Inexact terms' are less precise. Although they embody a complete expression of legislative meaning, that meaning always may not be obvious. *Id.* As to 'inexact terms,' the task of the agency, and ultimately of the court, is to determine what the legislature intended by using those words. *Id.* 'Delegative terms' express incomplete legislative meaning that the agency is authorized to complete. *Id.* at 228. As to 'delegative terms,' the agency's task is to complete the general legislative policy decision. *Id.* This court reviews the agency decision concerning a 'delegative term' to determine whether it is within the range of discretion allowed by the more general policy of the statute. *Id.* at 229."

Examples of "delegative terms" include "good cause," "fair," "unfair," "undue," "unreasonable," and "public convenience and necessity." *Springfield Education Assn.*, 290 Or at 228.

█ In this case, whether an appropriation has been "perfected" within the meaning of ORS 537.250(1) is expressly left to "the satisfaction of the department." That strongly suggests that the legislature intended to delegate substantial latitude and that it did not intend completely to express the meaning of the term. We therefore review the department's decision in this case to determine whether it is within the range of discretion allowed by the general policy of the statute.

█ Determining the general policy expressed in the statute is itself a matter of statutory construction. In accordance with *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), we examine the text of the relevant statutes in context to determine what the legislature most likely intended those statutes to mean.

As we have noted, the Water Rights Act begins with a declaration that all water within the state "belongs to the

public," ORS 537.110, and that all waters within the state "may be appropriated for beneficial use," ORS 537.120. "Beneficial use" is "the basis, the measure and the limit of all rights to the use of water in this state." ORS 540.610(1). The Supreme Court has held that the term inherently implies an element of continuity of use. *Withers et al. v. Reed*, 194 Or 541, 571, 243 P2d 283 (1952) (Tooze, J., dissenting) (agreeing with majority that the purpose of the Water Rights Act is "to see that these appropriators make beneficial and continual use of the waters").

Consistently with that inherent component of continuity, ORS 540.610(1) explicitly declares that, because beneficial use is the basis of water rights in this state, the cessation of use of that right will result in its forfeiture. Specifically, the statute declares that, when the owner of a perfected and developed water right ceases or fails to use all or part of the water that has been appropriated for five successive years, there is a "rebuttable presumption of forfeiture of all or part of the water right." *Id.*

■ More to the point of this case, ORS 537.250(1) requires that, to obtain a water rights certificate, the applicant must provide a survey to establish that, in fact, the permit satisfies the requirements of the Water Rights Act. ORS 537.230(3) then provides that the survey must be done "upon completion of beneficial use." Certainly that implies that the beneficial use continues at least to the time of the survey itself; otherwise, there is nothing for the surveyor to examine and certify. That much is confirmed by ORS 537.260(2), which provides that the department is to determine "the extent to which an appropriation has been perfected under any permit *at the time of submission of final proof provided for in ORS 537.250.*" (Emphasis added.) Thus, the Water Rights Act expressly contemplates that the beneficial use must continue to the time of submission of final proof.

■ In short, the Water Rights Act expresses a policy favoring appropriation of water for "beneficial use," which includes an element of continuity of use. And, consistently with that policy, the statutes pertaining to obtaining a certificate of water rights likewise include a policy of continuity of use.

Petitioners' arguments to the contrary are not persuasive. To begin with, their argument that the determination of whether an appropriation has been perfected is not a matter of delegation to the department cannot be reconciled with the language of the statute. ORS 537.250(1) states that the question whether an appropriation has been perfected is determined "to the satisfaction of the department." Indeed, if, as petitioners argue, "perfection" means any momentary appropriation of water to beneficial use, however minimal in time or amount, then the phrase "to the satisfaction of the department" has little, if any, purpose or significance.

Petitioners' argument that there is no requirement of continuity also runs afoul of ORS 540.610(1), which, after declaring beneficial use to be the standard for determining water rights in this state, provides that nonuse for a period of five years creates a rebuttable presumption of forfeiture. To be sure, that statute applies to already perfected water rights. The point is that petitioners' reading of the Water Rights Act would mean that a requirement of continued use applies to an owner of a perfected right, but not to an applicant for such a water right, a consequence that we find highly unlikely that the legislature intended.

Citing *Low v. Rizor*, 25 Or 551, 37 P 82 (1894), and other cases, petitioners insist that "perfection" historically has involved only an intent to put water to beneficial use and an actual appropriation and that the Water Rights Act evidences no departure from that rule. To the contrary, in *Green v. Wheeler*, 254 Or 424, 458 P2d 938 (1969), *cert den*, 397 US 990 (1970), the Supreme Court explained that, whatever may have been the law before the enactment of the Water Rights Act, appropriation of water, by itself, no longer is sufficient to establish the existence of a vested water right:

> "Prior to the water code of 1909 the appropriation of water in Oregon was recognized as a method of creating a vested interest in the waters of a stream. But the adoption of the water code introduced a new concept of establishing one's right to water. * * * Appropriation alone was no longer enough to establish a vested right in the waters of the state; the water code required, and still requires, the fulfillment of other conditions before a water right will vest in the appropriator. Various sections of the water code make this

> clear. The plan of the statute is to recognize vested rights in water not simply where there is an appropriation but when the 'appropriation has been perfected.' Thus, ORS 537.250 provides that a water right certificate shall be issued upon it appearing to the satisfaction of the State Engineer [now the department] 'that an appropriation *has been perfected in accordance with the provisions of* the *Water Rights Act.*' "

*Id.* at 430-31 (emphasis in original).

Having determined that a fundamental policy of the Water Rights Act generally, and the certificate approval process particularly, is that of the continuity of use of appropriated water, our review of the department's decision in this case is straightforward. The department concluded that, petitioners having failed to make use of any water described in Permit 30789 for at least six years as of the time of the survey, they did not establish to its satisfaction that they had perfected their water rights. That conclusion falls well within the range of discretion allowed by the policy of the Water Rights Act.

■ Petitioners argue that, even if the department did not err in concluding that "perfection" includes an element of continuity of use, it erred in failing to express that conclusion in an administrative rule. The department responds that no statute requires it to engage in formal rulemaking in this case and that that is dispositive. We agree with the department.

■ In *Trebesch v. Employment Division*, 300 Or 264, 710 P2d 136 (1985), the Supreme Court explained that whether rulemaking is required is exclusively a matter of statutory construction. If there is statutory text that, reasonably construed, may be taken expressly or by implication to require rulemaking, then rulemaking is required. Otherwise, it is not required:

> "We are called upon to consider whether the responsible officials * * * are required to promulgate rules in advance of adjudication. The answer is not found in the constitution or in a common law, that is, a judge-made law of administrative agencies; nor may it be divined from the state administrative procedures act, which does no more than set uniform procedures for state agencies. Rather, the answer is a

matter of statutory interpretation, the relevant statutes being those regulating the particular agency whose action is challenged. We seek to derive the legislature's intent from an analysis of the statutes by which a particular agency operates. The authorizing statutes will specify whether rulemaking or adjudication authority, or both, are delegated to the agency and will indicate the agency's tasks, the breadth of the agency's discretion to carry out these tasks, and the process by which they are to be accomplished."

*Id.* at 267 (citations omitted).

In this case, petitioners do not identify any statutory wording that, when reasonably construed, requires the department to promulgate an administrative rule before reading the Water Rights Act to establish continuity of use as a condition of perfection. Instead, petitioners argue that, because this court has held that when the legislature provides guidance for the implementation of policy no rulemaking is required, *see, e.g., Steamboaters v. Winchester Water Control Dist.*, 69 Or App 596, 603-04, 688 P2d 92 (1984), *rev den*, 298 Or 553 (1985), it necessarily follows that, when such guidance is lacking, rulemaking is required. In this case, they contend, because the legislature has provided no guidance as to what may be required to satisfy the department as to whether an appropriation has been perfected within the meaning of ORS 537.250(1), it necessarily follows that rulemaking is required.

Petitioners' argument employs the logical fallacy of denying the antecedent. Merely because rulemaking is not required when the legislature does provide guidance, it does not *necessarily* follow that rulemaking is required when the legislature does not supply such guidance. Moreover, and more importantly, as we have noted, the legislature did provide guidance as to the necessity of continuity of use of a water right. The relevant statutes make clear that continuity of use is a necessary condition of "beneficial use" in general and of obtaining a satisfactory survey in particular.

In a separate assignment of error, petitioners argue that the department erred in concluding that they had failed to perfect their appropriation because the facts as found by

the department lead to only one reasonable conclusion, namely, that they did perfect the appropriation. The argument, however, depends entirely on petitioners' contention that "perfection" refers, as a matter of law, to a noncontinuous appropriation of water, a contention that we already have rejected.

Petitioners advance other assignments as well, which we reject without discussion.

Affirmed.