Argued and submitted February 11, reversed and remanded on petition; affirmed on cross-petition July 28, petition for review allowed November 23, 2004
(337 Or 616)
See later issue Oregon Reports

Karin BERGERSON,
*Respondent - Cross-Petitioner,*

*v.*

SALEM-KEIZER SCHOOL DISTRICT,
*Petitioner - Cross-Respondent.*

FDA-02-2; A118518

95 P3d 215

Nancy J. Hungerford argued the cause for petitioner - cross-respondent. With her on the briefs were Jennifer L. Hungerford and The Hungerford Law Firm.

Thomas K. Doyle argued the cause for respondent - cross-petitioner. With him on the briefs was Bennett, Hartman, Morris & Kaplan, LLP.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Barron, Judge pro tempore.

BARRON, J. pro tempore.

---

* Deits, C. J., *vice* Wollheim, J.

## BARRON, J. pro tempore

Petitioner Salem-Keizer School District (the district) seeks review of an order of the Fair Dismissal Appeals Board (FDAB) requiring it to reinstate respondent, a former third grade teacher at Chapman Hill Elementary School. The district dismissed respondent on grounds of "neglect of duty" and "immorality" under ORS 342.865(1)(b) and (d)[1] following an incident in which she drove her vehicle into the back of her estranged husband's pickup truck. Respondent cross-petitions, raising challenges to various aspects of FDAB's order. We previously issued a written decision denying the district's motion to stay FDAB's order reinstating respondent. *Bergerson v. Salem-Keizer School District*, 185 Or App 649, 60 P3d 1126 (2003) (*Bergerson I*). Now, on the merits, we reverse and remand on the petition, but affirm on the cross-petition.

Because we stated the facts that FDAB found in *Bergerson I*, we quote from that decision, supplementing with additional facts from FDAB's order where necessary to the issues on review. "Respondent is an elementary school teacher who worked for the district for approximately 19 years. Until her dismissal, she never was the subject of any disciplinary action." *Id.* at 651. Early in 1999, respondent began to encounter marital difficulties. Her husband moved out of the home in March, returned in July, and then moved out again permanently in December 1999. In August 2000, he was involved in a serious motorcycle accident. Respondent was "directly involved with hospital staff in the initial decision-making concerning her estranged husband's medical care." She spent substantial time at the hospital, "essentially work[ing] halftime" for a month at the beginning of the school year. When her estranged husband was stabilized and moved

---

[1] ORS 342.865 provides, in part:

"(1) No contract teacher shall be dismissed or the teacher's contract nonextended except for:

"* * * * *

"(b) Immorality;

"* * * * *

"(d) Neglect of duty, including duties specified by written rule[.]"

to a rehabilitation center in Salem, respondent "learned, for the first time, that her husband was involved in another relationship when his girlfriend approached her at the center and asked [respondent] to desist from any further involvement with her husband's medical treatment." Within the next few weeks, respondent learned that her husband had commenced dissolution proceedings against her. Around the same time, respondent learned that her son's girlfriend was pregnant. Respondent was present at the birth of the child, whom the girlfriend released for adoption one week later.

Respondent had been attending counseling for the year prior to the incident that precipitated these proceedings. In November 2000, she learned that her counselor was leaving the practice. Respondent planned to find a new counselor after the holiday season. Respondent also discussed her personal situation at meetings with other teachers, which FDAB noted was a common practice among the teachers. Respondent testified that she felt extremely depressed and hopeless as the holidays progressed and, on January 6, 2001, she decided to visit her estranged husband because she wanted him "to take responsibility for his family."

We described the ensuing events in *Bergerson I* as follows:

"In January 2001, respondent went to the residence of her estranged husband's girlfriend, where respondent's husband was living.[2] After an emotional confrontation with her husband, respondent got in her van and ingested Prozac and pain medication in an attempt to commit suicide. She then drove the van into her husband's pickup truck, which was parked in the driveway, pushing the pickup into the door of the attached garage.

"Two area newspapers reported the incident.[3] Respondent spent one night in the hospital and then voluntarily committed herself to a psychiatric unit. The district hired a

---

[2] The record indicates that, when respondent first went to the residence, no one was home. Respondent left, waited in a park, and then returned to the residence.

[3] FDAB noted that one of the articles appeared in the Statesman Journal, which has the largest circulation of any commercial newspaper in the Salem area.

substitute teacher and placed respondent on administrative leave with pay. She did not return to teaching after being released from the hospital.[4]

"The district attorney filed a four-count criminal complaint against respondent. Respondent pleaded no contest to one count of criminal mischief,[5] but the plea is revocable if she successfully completes a 36-month probationary period.[6] [At the hearing before FDAB, a] deputy district attorney testified that, if respondent violates the terms of her probation, a judgment of conviction will result automatically, but if she complies with the conditions, 'the case will "evaporate" as if it had never been filed.'

"The parents of 12 students at respondent's school expressed concern about respondent returning to teach there. Some staff members at the school also objected to respondent's return. District administrators initially decided that respondent would be reassigned to another school. The district then conducted an additional investigation to determine what knowledge district staff had concerning the incident and whether respondent had previously demonstrated anger control problems in a school setting."

185 Or App at 651-52.

Eventually, in November 2001, the district superintendent sent respondent a letter notifying her that she was recommending respondent's dismissal and providing the factual basis for that decision.[7] The district then provided an

---

[4] This is unlike the situation in *Poole v. Lebanon Community School District*, FDA 98-2 (Aug 2, 1998), where the teacher was allowed to continue teaching for several months before the recommendation for his dismissal was made by the superintendent.

[5] Respondent pleaded no contest to criminal mischief in the first degree, which is a Class C felony carrying a maximum penalty of five years' imprisonment.

[6] When we described the no contest plea as revocable in *Bergerson I*, we used the language used by FDAB in its conclusions of law. FDAB's conclusion is incorrect. No witness at the hearing testified that the plea was revocable. The testimony indicated that, if respondent successfully completes her 36-month probation, the case against her would be dismissed, but if she violates the probation, she is automatically sentenced on her plea of no contest, which is the equivalent of a guilty plea. *See* ORS 135.345.

[7] We do not set forth that letter in this opinion. Rather, we refer to its specific content as needed to discuss the parties' assignments of error.

informal hearing on December 11, 2001, and the school board was presented with the hearing officer's findings. The school board voted unanimously to dismiss respondent.

Respondent appealed to FDAB. An FDAB panel held a hearing on April 2 - 4, 2002. At the hearing, a psychologist testified that, based on an evaluation he conducted in January 2002, the January 6, 2001, incident was not part of a pattern of conduct but was, instead, an isolated event that was unlikely to recur. He characterized respondent's behavior as "impulsive" during that incident and as "endangering her and with the potential for endangering other individuals if they had been near the scene, or in the garage." In addition, respondent submitted an August 2001 letter from her treating psychiatrist stating that respondent was emotionally and mentally fit to return to her teaching duties. Evidence before FDAB also included information about two district teachers who had attempted suicide and had been successfully returned to the classroom and about another teacher who, after an incident of spousal abuse as to which the victim had recanted, had been given a letter of warning and had entered into a diversion agreement on a charge of harassment.

Under ORS 342.905(6), FDAB's role in reviewing the school board's decision to dismiss respondent is three-fold.[8] It must determine "(1) whether the facts alleged are true and substantiated, (2) whether the facts are adequate to justify the statutory grounds cited, and (3) whether the sanction was arbitrary, unreasonable, or excessive." *Ross v. Springfield School Dist. No. 19*, 294 Or 357, 364, 657 P2d 188 (1982)

---

[8] ORS 342.905(6) provides, in part:

"The Fair Dismissal Appeals Board panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal or nonextension are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing that are relevant to the statutory standards in ORS 342.865(1), are adequate to justify the statutory grounds cited. In making such determination, the panel shall consider all reasonable written rules, policies and standards of performance adopted by the school district board unless it finds that such rules, policies and standards have been so inconsistently applied as to amount to arbitrariness. The panel shall not reverse the dismissal or nonextension if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal or nonextension was unreasonable, arbitrary or clearly an excessive remedy."

(*Ross I*) (noting three inquiries under predecessor to ORS 342.905(6)).

In its findings and order, FDAB found that the following facts contained in the superintendent's November 2001 letter were true and substantiated: (1) respondent drove her vehicle into the back of an unoccupied pickup truck in the possession of her estranged husband, and her conduct was intentional; (2) respondent pleaded no contest to the charge of criminal mischief; (3) as a result of the crash, respondent suffered injuries that required her to be hospitalized and would have rendered her unable to work for at least several days; (4) articles appeared in two newspapers on January 7, 2001, and January 11, 2001, respectively; and (5) parents expressed concern about respondent's returning to teaching as a result of the incident.

FDAB found the following facts contained in the superintendent's letter not to be true and substantiated: (1) respondent was driving at an excessive rate of speed at the time of the incident; (2) the matter was "widely publicized"; (3) respondent had been compromised in her "effectiveness as a teacher" during the two years leading up to the incident; (4) respondent had failed to engage in mental health treatment or to request leave; (5) respondent had indicated that her conduct was acceptable and none of the district's business; and (6) parents had articulated specific facts about which to be concerned prior to the incident. FDAB noted that the "chief law enforcement authority in the area has reached an agreement with [respondent] to resolve the matter with the probability or likelihood of no criminal charges on her record" and that, although the psychologist testified that respondent had acted impulsively and created a danger to herself and others, he also opined that the event was isolated. FDAB also stated that the event did not "cause a public outcry" and that parents neither came forward "in great numbers"[9] nor were they aware of the background of the events, the medical opinions concerning respondent since the event, or the district's success in dealing with other teachers who had attempted suicide.

---

[9] "On closer examination," FDAB noted that 11 parents came forward; seven were opposed to respondent's return to the school and four favored it.

Based on the facts that FDAB found true and sub-stantiated, it concluded that the statutory grounds of neglect of duty and immorality were established. As to the former, FDAB noted that respondent's conduct affected positive rela-tions with parents and the community and the dignity of the profession. It relied on one of its prior decisions, *Poole v. Lebanon Community School District*, FDA 98-2 (Aug 20, 1998), in which it held that "off-duty" conduct can constitute neglect of duty under the fair dismissal law. As to the statu-tory ground of immorality, FDAB determined that "immor-ality" involved conduct that harmed third parties or violated community standards as evidenced in criminal statutes. It concluded that respondent had engaged in conduct that ignored risks to others, was public, and disregarded a "gen-eral standard in this state that suicide is not to be condoned."[10]

Even though FDAB concluded that the facts that it found to be true and substantiated were adequate to justify two statutory grounds for dismissal and that the sanction was not arbitrary, it reversed the school board based on its conclusion that the dismissal was both unreasonable and clearly an excessive remedy under ORS 342.905(6). We set forth FDAB's analysis in its entirety:

"The District's decision was unreasonable in this case. Where a group of concerned parents have, in one sense, had their concerns addressed by reassigning [respondent], and that decision was made in advance of the employment status issue, the district could factor in its prior success with teachers engaging in suicide attempts. It could also factor in that another teacher with at least the same, if not a stronger criminal outcome, was given a Letter of Warn-ing. The decision in this case was 'lacking justification in fact or circumstance' and was therefore unreasonable [cit-ing definition of 'unreasonable' from *Merriam-Webster's Dictionary of Law* (1996)].

---

[10] FDAB also concluded that the dismissal action was not arbitrary. *See* ORS 432.905(6) (providing that inconsistent application of written rules, policies, and standards by a school district board may constitute "arbitrariness"). That deter-mination is not at issue here.

"The dismissal decision was clearly excessive in this case. The facts do not support the 'pattern-of-behavior' conclusion reached by the District. The evidence suggests that there was a strong reaction to an isolated event, leading to broader review of [respondent] and that the district thought it had proof of a long-term performance issue. The facts did not sustain this position. The district did not consider a 'fitness for duty' process as a basis to review the [respondent's] mental status, although other district employees were given this opportunity. Instead, without concrete supporting facts, the district claimed a two-year problem rather than assessing the [respondent's] conduct and the complex series of events affecting [respondent] within a specific period of several months.[110] The district also did not understand the District Attorney's intended legal outcome of the criminal proceedings, which may have caused it to place more emphasis on the single court document than the law recognizes. Clearly this situation was not a stranger-to-stranger interaction which would have been much more serious. This untoward domestic situation, while unacceptable 'justification' for [respondent], has been ameliorated. The [respondent] has been judged, after years of exemplary teaching service, on a single event.

---

"[110] There was no evidence from performance review of any concerns about [respondent] during the two years proceeding [*sic*] the incident. That is a critical fact to the panel."

(Some footnotes omitted.) FDAB also concluded that it was not necessary, under our decision in *Thomas v. Cascade Union High Sch. Dist. No. 5*, 80 Or App 736, 724 P2d 330 (1986), to remand the case to the school board even though it had found many of the facts not to be true and substantiated.[11]

---

[11] In regard to not remanding the case to the school board, FDAB stated:

"In fact, the Panel did not find a numerical majority of the itemized facts to meet the statutory standard of proof. Therefore the question is whether the case needs to be remanded to the school district for another consideration. For the reasons that follow the panel concludes that it does not in this case."

The factfinding process set forth in ORS 342.905 does not include FDAB adding up itemized facts to determine what action it should take in reviewing a school board's decision.

On review, the district makes three assignments of error. First, it asserts that FDAB erred in concluding that dismissal was unreasonable and clearly an excessive remedy. Next, it asserts that, because FDAB found many facts not to be true and substantiated, it was required, under *Thomas*, to remand the case to the school board. Finally, the district asserts that FDAB erred with respect to numerous specific factual findings. Respondent disagrees with each of those contentions. On cross-petition, she also assigns error to FDAB's finding that she intentionally drove her van into her estranged husband's pickup, to its conclusion that she neglected her duty, and to its interpretation of the statutory term "immorality."

We begin with the district's first assignment of error. The district argues that FDAB impermissibly substituted its judgment for that of the school board in concluding that the dismissal was unreasonable and clearly an excessive remedy. It argues that the appropriate standard for FDAB review is whether "no reasonable school board" would have imposed the sanction. With respect to FDAB's conclusion that the sanction was unreasonable, the district asserts that FDAB failed to apply the definition of "unreasonable" that it adopted, that it improperly relied on the school board's actions in several distinguishable situations, and that it erroneously determined that parents' concerns had been addressed by reassignment. With respect to FDAB's conclusion that dismissal was clearly an excessive remedy, the district contends that FDAB failed to define the term and that, in any event, FDAB's reasoning does not support its conclusions because there is no evidence supporting FDAB's conclusion that the school board relied on a pattern of behavior, because the school board was not required to assess respondent's fitness for duty, and because FDAB improperly focused on the future legal effect of respondent's plea agreement and erroneously concluded that the school board misunderstood the legal significance of that document.

■  As an initial matter, we must determine the standard of review that governs this assignment of error. We do not understand the district to be asserting here that FDAB's

findings underlying its conclusion are not supported by substantial evidence.[12] Rather, the district appears to take issue with FDAB's interpretation and application of the applicable standards. "When an agency's interpretation or application of a provision of law is at issue, the reviewing court's standard of review depends upon whether the phrase at issue is an exact term, an inexact term, or a delegative term." *Coast Security Mortgage Corp. v. Real Estate Agency,* 331 Or 348, 353, 15 P3d 29 (2002) (citing *Springfield Education Assn. v. Springfield School Dist.,* 290 Or 217, 223, 621 P2d 547 (1980)). In *Bergerson I*, we stated that the terms "unreasonable" and "clearly an excessive remedy" in ORS 342.905(6) "appear to be delegative," citing *Springfield Education Assn.,* which referred to the term "unreasonable" as delegative. 185 Or App at 661.

■    Where a statutory term is delegative, the agency must determine the legislative policy underlying the statute and construe and apply the term consistently with that policy, *Springfield Education Assn.,* 290 Or at 223, and our review is limited to determining whether FDAB's "decision is within the range of discretion allowed by the more general policy of the statute." *Id.* at 229. "Determining the general policy expressed in the statute is itself a matter of statutory construction." *Hale v. Water Resources Dept.,* 184 Or App 36, 41, 55 P3d 497 (2002). Accordingly, we apply the interpretive principles established by *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993). At the first level of interpretation, we consider, among other things, prior judicial interpretations of the relevant statutes. *Davis v. O'Brien,* 320 Or 729, 741, 891 P2d 1307 (1995).

■    We discussed the scope of FDAB's authority under ORS 342.905(6) in *Lincoln County School Dist. v. Mayer,* 39 Or App 99, 591 P2d 755, *rev den,* 287 Or 215 (1979).[13] The version of the statute then in effect provided that a school board's decision to dismiss a teacher was to be reversed if

---

[12] The district arguably contests some of the factual underpinnings of FDAB's conclusions in its third assignment of error. However, because the district has raised those issues separately, we will likewise address them separately.

[13] At the time, the statute was numbered ORS 342.905(5). It has since been renumbered several times, most recently as ORS 342.905(6) in 2001. Or Laws 2001, ch 449, § 1.

FDAB found either that the facts were not true and substantiated or that they did not support the cited statutory grounds for dismissal. *Former* ORS 342.905(5). In *Mayer*, we first observed that "authority to dismiss a permanent teacher is vested in the district school board * * *." 39 Or App at 105. We went on to note that,

> "the school board's dismissal is subject to a formal fact-finding hearing to determine whether the facts relied upon to support the statutory reasons for discharge are 'true and substantiated.' If they are not, the teacher is reinstated. If they are, FDAB must then review the school board's judgment that the facts are 'adequate to justify the statutory grounds cited as reasons for the dismissal.' In other words, it is not for FDAB to determine whether it would dismiss the teacher, but whether there is some evidence to justify the 'grounds cited as reasons,' not the dismissal itself."

*Id.* at 106. In light of that analysis, we held that,

> "once FDAB has determined what facts relied upon to support the recommendation of the district superintendent are true, it may not reverse the school board action unless *no reasonable school board would have regarded those facts as sufficient* to support the statutory grounds cited as reasons for the dismissal, so long as those facts are reasonably related to the grounds cited."

*Id.* at 107 (emphasis added).

The legislature amended ORS 342.905 in 1979, adding the provision that "the [FDAB] panel shall not reverse the dismissal if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal was unreasonable, arbitrary or clearly an excessive remedy." *See* Or Laws 1979, ch 668, § 4. The Supreme Court later construed that amendment and held that it was intended to codify our decision in *Mayer*. *Ross I*, 294 Or at 364 ("We do not read the legislative history of the amendment that resulted as other than a codification of the *Mayer* decision. We agree with the observation of the Court of Appeals that with regard to the sanction 'the amended statute makes clearer than did the statute in effect at the time of *Mayer* that the FDAB may not substitute its

judgment for that of the school board.' " (Citation omitted.)). *See also State v. Reid*, 319 Or 65, 69, 872 P2d 416 (1994) (stating that the Supreme Court's construction of a statute "becomes a part of the statute as if written into it at the time of its enactment"). Although the statute has since been renumbered and amended in minor ways, the operative language has remained unchanged.

■   It follows that the legislative policy underlying ORS 342.905(6) mandates that FDAB "not substitute its judgment for that of [a] school board." *Ross I*, 294 Or at 364 (internal quotation marks and citation omitted). The agency is required to construe and apply the terms "unreasonable" and "clearly an excessive remedy" consistently with that policy. Thus, FDAB impermissibly substitutes its own judgment for that of a school board as to the propriety of a dismissal unless no reasonable school board would have imposed that sanction.

■ ■   As noted, FDAB relied on *Merriam-Webster's Dictionary of Law* to define "unreasonable" to mean "lacking justification in fact or circumstance." On its face, that definition is consistent with the scope of the agency's authority; no reasonable school board would dismiss a teacher if that action lacked justification in fact or circumstance. The problem is with FDAB's application of that definition to the facts. If FDAB determines that a sanction is unreasonable or clearly an excessive remedy, it must articulate a tenable basis for that conclusion. *Ross v. Springfield School Dist. No. 19*, 300 Or 507, 517, 716 P2d 724 (1986) (*Ross II*). In other words, FDAB must explain why it concludes that no reasonable school board could have determined that dismissal was justified. Failure on the part of FDAB to do so suggests that it impermissibly substituted its own judgment for that of the school board. *See Jefferson County School Dist. No. 509-J v. FDAB*, 311 Or 389, 399, 812 P2d 1384 (1991) (reversing FDAB's order because the agency's "explanation did not support its conclusion that dismissal was an unreasonable and clearly excessive sanction"). For the reasons that follow, we conclude that FDAB did not adequately explain its reasoning with respect to the conclusion that respondent's dismissal was unreasonable.

In support of its determination, FDAB stated that parental concerns had been addressed by reassignment and that the school board "could have" factored in both "its prior success with teachers engaging in suicide attempts" and the fact that "another teacher with at least the same, if not a stronger criminal outcome, was given a Letter of Warning." We do not understand why those facts support the conclusion that no reasonable school board would have dismissed respondent.

First, the fact that the school board initially decided to address parental concerns by reassigning respondent does not mean that its subsequent action of dismissing her was unreasonable. The school board was not limited to its earlier actions with respect to respondent. In fact, FDAB itself has concluded that a superintendent, in recommending dismissal, is not bound to agree with an initial and less severe disciplinary decision. *See Thomas v. Cascade Union High School District No. 5*, FDA 84-7 (Order on Remand) (Oct 29, 1987). Second, with respect to treatment of other district teachers, we agree with the district that those cases are distinguishable from this one in important respects.[14] FDAB

---

[14] FDAB stated that the facts it found true and substantiated regarding respondent's conduct were not sufficiently distinguishable from the other teacher suicide attempts to justify the harsher treatment that respondent received. Other than noting in its findings that the other attempts were "not undertaken in a matter [sic] that resulted in any publicity," FDAB did not elaborate on the facts in those other cases or compare them with respondent's case. The record reveals that neither of the other teacher suicide attempts involved any other parties at the time of the act and did not involve the commission of a crime by the other teachers. We think that those facts present a significant difference that FDAB is required to explain.

In the case of the teacher who was given a letter of warning, FDAB noted that the victim of the assaultive conduct "recanted and refused to come forward" and that the teacher entered into a diversion agreement. The diversion agreement referred to by FDAB contains an admission of guilt to the charge of harassment, a Class B misdemeanor carrying a maximum penalty of six months. The agreement was only for 180 days and did not prevent the teacher from contesting the charge at trial if the agreement was revoked. If the agreement was revoked and the teacher denied the charge at trial, the state could use the admission of guilt only to impeach him. Without any other evidence that a crime was committed, the teacher could not have been found guilty on his admission alone. ORS 136.425(1). Further, the only requirements that the teacher had to meet to comply with the diversion agreement were payment of small financial assessments of less than $300 and completion of 40 hours of community service. The diversion agreement is clearly less serious than the no contest plea entered by respondent, as demonstrated by the following exchange between FDAB's attorney and a deputy district attorney, who handled the case against respondent and whom FDAB called as a witness:

failed to explain in its order why it concluded that those distinctions are not significant. Moreover, it did not explain why the school board acted unreasonably by failing to consider circumstances that, according to FDAB, it "could have," considered but was not required to.[15] In effect, FDAB appears to fault the school board for not taking a different course of action, but it fails to explain why the school board's chosen course was unreasonable based on the facts before it. Comparing factually distinguishable cases in deciding whether a school board acted unreasonably is not particularly helpful in the "development of criteria which can be consistently applied." *See Thomas*, 80 Or App at 740.

FDAB also has not sufficiently explained its conclusion that dismissal was clearly an excessive remedy. First, FDAB did not define that term, making it difficult for us to determine whether it applied an appropriately deferential standard. Under *Mayer* and *Ross I*, it appears that FDAB may conclude that dismissal is clearly an excessive remedy if, given the particular circumstances, no reasonable school board would conclude that the sanction is appropriate.[16]

---

"[FDAB COUNSEL]: So, for purposes of admission of guilt this [diversion agreement] is a higher or higher degree of admission of culpability than a no contest plea?

"[WITNESS]: No. I would think lesser."

[15] We are also uncertain why FDAB concluded that the school board did not consider those other cases. However, the district does not challenge that finding for lack of substantial evidence and we therefore do not address that issue.

[16] *Merriam-Webster's Dictionary of Law* defines "clear" as free from doubt or ambiguity," and "excessive" as "exceeding what is proper, necessary, or normal," but since it is FDAB's responsibility to define the terms of the statute, the court cannot presume that FDAB will define "clearly an excessive remedy" in any particular way, as it did with the term "unreasonable" in this case; on remand, the agency is free to suggest a definition different from the broad definition of "no reasonable school board."

We note that there is some tension between current principles of statutory construction and the manner in which *Ross I* and other cases have addressed the terms "unreasonable" and "clearly an excessive remedy." It is ordinarily inconsistent with interpretive principles to give a single meaning to different terms within a single statute. However, the cases have not distinguished between those terms when stating that, "after FDAB has found sufficient facts to justify a statutory basis for dismissal, FDAB may not reverse a school board's decision to dismiss a teacher unless it can say that 'no reasonable school board' would have imposed that sanction." *Jefferson County School Dist. No. 509-J*, 311 Or at 398. Thus, from the cases, both terms appear to mean that "no reasonable school board" would dismiss the teacher in question. On remand, FDAB should consider whether the terms have distinct meanings within that broad definition.

FDAB did not explain sufficiently how the facts that it relied on demonstrate that respondent's dismissal was clearly an excessive remedy. As noted, FDAB concluded that the school board, among other things, relied on a pattern of behavior, should have allowed a fitness for duty exam, and misunderstood the legal outcome of respondent's plea agreement.

Regarding the first reason, FDAB failed to explain why it was clearly an excessive remedy for the school board to dismiss petitioner based on an isolated incident.[17] Clearly, FDAB's overarching concern here was that respondent had "been judged, after years of exemplary teaching service, on a single event." However, the mere fact that something may have been an isolated incident does not necessarily make dismissal clearly an excessive remedy. The seriousness of the offense must be taken into account; for example, dismissal presumably would not be clearly an excessive remedy for a teacher who has committed murder once, even if he or she had an exemplary teaching record for many years. Indeed, in its prior decisions, FDAB has recognized that cause for dismissal for neglect of duty can be based on a single incident. *Thyfault v. Pendleton School District No. 16R*, FDA 90-4 (Jan 18, 1991) (upholding dismissal based, in part, on spanking of child); *see also Webster v. Columbia Education Service District*, FDA 96-1 (May 8, 1998) (upholding dismissal based on single act of buying drugs on school grounds), *aff'd*, 163 Or App 416, 991 P2d 63 (1999); *Thomas v. Cascade Union High School District No. 5*, FDA 84-7 (Oct 29, 1987) (Order on Remand After Appeal) (upholding dismissal based on single incident of teacher kicking student), *aff'd*, 98 Or App 679, 780 P2d 780 (1989). In short, although FDAB may disagree with the school board's choice to dismiss respondent based on the single incident, it failed to explain why the particular facts of this case made it clearly an excessive remedy to do so.

With respect to its second reason for concluding that dismissal was clearly an excessive remedy, FDAB noted that the school board had extended a "fitness for duty" process to

---

[17] In its third assignment of error, the district challenges FDAB's finding that it was not true or substantiated that there was a pattern of behavior by respondent; we conclude below that the finding is supported by substantial evidence. 194 Or App at 323.

other district teachers, but it failed to explain why the school board was required to consider that process in respondent's .case. The mere fact that the school board provided such exams in other cases does not necessarily mean that it must do so in *every* case and, further, does not explain why the school board's failure to do so in this case renders its action clearly an excessive remedy, especially considering that the other cases are factually distinguishable in that no third parties were involved and no criminal conduct on the part of the other teachers was involved.

Finally, we do not agree with FDAB's conclusion that the school board misunderstood the legal outcome of the criminal proceedings against respondent. FDAB stated that the school board "may" have placed more emphasis on respondent's plea agreement "than the law recognizes." We take the agency's statement to mean that respondent's dismissal was clearly an excessive remedy because the school board failed to appreciate the fact that, if respondent successfully completed her probation, the charge against her would be dismissed. The statement is problematic in two respects. First, it is purely speculative that the charge will be dismissed.[18] Second, it is unclear why the possibility that it may be dismissed is relevant to the analysis of whether the school board's sanction was clearly an excessive remedy. FDAB itself has previously stated that the fact a teacher is found not guilty of criminal conduct does *not* affect a decision as to whether the teacher should be dismissed. *See Webster*, FDA 96-1; *Poole*, FDA 98-2.

Even if the charge against respondent is eventually dismissed, the record clearly shows that respondent pleaded no contest to criminal mischief in the first degree, a felony, was placed on 36 months' probation, and was ordered to pay restitution of over $20,000. In light of those facts, FDAB has not sufficiently explained why it determined that the school

---

[18] FDAB appears to have assumed that respondent would in fact successfully complete her probation. It stated in its order that the "chief law enforcement authority" had reached an agreement with respondent with "the probability or likelihood of no criminal charges on [respondent's] record." However, FDAB acknowledged, "If this were to change in that the District Attorney moved for sentencing based on a violation of the terms this would, of course, be a new situation for both [respondent] and the District."

board's decision to dismiss respondent was clearly an excessive remedy. FDAB may have given undue weight to the fact that the charge against respondent might be dropped on successful completion of her probation. Conversely, FDAB appears to have given insufficient consideration to relevant inquiry, namely, whether a reasonable school board could have concluded that what had actually occurred in the criminal proceedings as of the time of respondent's dismissal justified that sanction. Without further explanation from FDAB as to why the relevant facts rendered dismissal clearly an excessive remedy, we cannot agree with its conclusion.

We are also concerned with the reasoning of the statement made by FDAB that, "Clearly this situation was not a stranger-to-stranger interaction which would have been much more serious. This untoward domestic situation, while unacceptable 'justification' for [respondent], has been ameliorated." That statement presumably is based on FDAB's earlier decision in *Poole,* in which it also stated that a stranger-to-stranger interaction would have been much more serious than an interaction between family members. First, it is a fact that respondent's husband's girlfriend, whose house was damaged by respondent's criminal actions, was not a family member of respondent. In addition, an incident like the one at issue in this case likely is subject to the Family Abuse Prevention Act, ORS 107.700 to 107.732 as well as the mandatory arrest provision for violations of the act, ORS 133.310(3), both of which were enacted in 1977, *see* Or Laws 1997, ch 845. Indeed, Oregon's code makes some crimes more serious if committed against family members than if committed against strangers. *See, e.g.,* ORS 163.160(3)(b) (assault in the fourth degree is a Class A misdemeanor but becomes a Class C felony if the person charged commits it against a family member and has been convicted at least three times previously for assaults involving domestic violence). We therefore are unpersuaded by the notion that crimes committed against family members are less serious as crimes committed against strangers.

■ In sum, FDAB's stated reasoning is insufficient to support its determination that the school board's action in this case was unreasonable or clearly an excessive remedy. Having reached that conclusion, we ordinarily would remand

the matter to FDAB to address the deficiencies that we have identified. ORS 183.482(8)(b); *Ross II*, 300 Or at 517. However, in its second assignment of error, the district asserts that FDAB should have remanded the case to the school board. Because we assume that FDAB will modify its order on remand, the issue of whether the agency should, in turn, remand to the school board remains. We therefore consider that question.

The district argues that, under our decision in *Thomas*, FDAB was required to remand this case once it found some of the facts relied on by the school board not to be true and substantiated. In particular, it notes that FDAB improperly considered the absence of facts and that, because FDAB found the school board's "allegations of a 'long-term performance issue' * * * not sustained," it should have remanded for the school board to determine "to what extent the two issues [the issue of respondent's long-term performance and that of the specific incident on January 6, 2001,] were considered together." The district also faults FDAB for speculating about the school board's motives. Taking her cue from FDAB's order, respondent argues that "[i]t simply makes no rational sense to empower [FDAB] to reverse a decision of a school district if [FDAB's] power is actually limited to mere remand to the school district in question if *any* facts found by the district are not found to be true by [FDAB]." (Emphasis in original.) We agree with respondent based on an analysis of ORS 342.905(6) to (8).

*Thomas* involved a teacher who was dismissed for kicking a student and verbally harassing the student about the incident afterwards. FDAB concluded that the facts surrounding the verbal confrontation were unproven and that dismissal had to rest on the kicking incident alone. 80 Or App at 738-39. It then concluded that three of the four cited statutory grounds for dismissal had not been proved. *Id.* at 742. Nevertheless, FDAB affirmed the dismissal, concluding that the fourth statutory ground was adequately supported by facts that it found to be true and substantiated. *Id.* at 741-42. On review, we held:

"Authority to dismiss a permanent teacher is vested solely in the district, subject to the statutory fair dismissal

scheme, and then only after a recommendation of dismissal from the superintendent to the board. ORS 342.895(1).

"Under ORS 342.905[(6)], FDAB must affirm 'if it finds the facts relied upon are true and substantiated * * *.' It follows that there must be some consequence if all or part of those facts are not proven. Here, FDAB found that many of the facts on which the district relied were unsubstantiated and that several grounds for dismissal were unproven. We cannot say that the district would have dismissed petitioner on the basis of the more limited facts that were found to be true. It is clear from the record that the two incidents, the kicking and the subsequent locker room confrontation, were considered together with the latter aggravating the seriousness of the kicking. Accordingly, we remand the case to FDAB for remand to the district for further consideration of the sanction imposed."

*Id.*

At first blush, *Thomas* appears to require that, whenever some of the facts relied on by a school board are found to be untrue or unsubstantiated, FDAB must remand to the board so that it may determine, in the first instance, whether dismissal is appropriate under the facts that FDAB found to be true and substantiated. In its order in this case, FDAB took the position that, under *Thomas*, it had the authority to reverse, rather than remand, the school board's dismissal decision if, on the facts FDAB did find to be true and substantiated, the dismissal was unreasonable, arbitrary, or clearly an excessive remedy.

■ We generally adhere to the doctrine of *stare decisis* in considering an issue of statutory construction that we have previously resolved. *See, e.g., Newell v. Weston,* 156 Or App 371, 380, 965 P2d 1039 (1998), *rev den,* 329 Or 318 (1999). However, when we are convinced that the construction was "plainly wrong," we will overrule it. *See id.; Kambury v. DaimlerChrysler Corp.,* 173 Or App 372, 379, 21 P3d 1089, *rev'd on other grounds,* 334 Or 367, 50 P3d 1163 (2002).

As pertinent here, ORS 342.905 provides:

"(6)   * * * The [FDAB] panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal * * * are true and substantiated. If the panel

finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing that are relevant to the statutory standards in ORS 342.865(1), are adequate to justify the statutory grounds cited. * * * *The panel shall not reverse the dismissal * * * if it finds the facts relied upon are true and substantiated* unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal * * * was unreasonable, arbitrary or clearly an excessive remedy.

"(7)(a)   Subject to subsection (6) of this section and paragraph (b) of this subsection [authorizing district school board to withhold reinstated teacher from performance of teaching duties pending judicial review of FDAB decision], *if the [FDAB] panel finds that the facts relied on to support the recommendation of the district superintendent are untrue or unsubstantiated,* or if true and substantiated, are not adequate to justify the statutory grounds cited as reason for the dismissal * * *, *the teacher shall be reinstated* and the teacher shall receive such back pay as ordered by the [FDAB] panel * * *.

"* * * * *

"(8)   Subject to subsection (6) of this section, *if the [FDAB] panel finds the facts relied on to support the recommendation of the district superintendent true and substantiated,* and that those facts justify the statutory grounds cited as reason for the dismissal * * *, *the dismissal * * * becomes final* on the date of the notice."

(Emphasis added.) By its terms, the statute provides two options: reversal of the dismissal and reinstatement, on the one hand, and affirmance of the dismissal, on the other. The statute nowhere uses the term "remand."[19]

In *Thomas,* FDAB found that some of the facts that the school board relied on were unsubstantiated. As noted, this court stated that there "must be some consequence if all or part of those facts are not proven." *Thomas,* 80 Or App at 741. However, the statute itself makes no distinction

---

[19] The reason may be, as suggested by FDAB in its order, that the goal of providing finality within specific time lines would be frustrated by a remand to a school board for reconsideration of the sanction. *See* ORS 342.905(1)(a), (2)(c), (5)(b).

between "all" or "some" of the facts nor does it expressly provide for a "consequence" in the event that *some* facts are untrue or unsubstantiated while others are proven. Specifically, nothing in the text of ORS 342.905 requires or allows remand to a school board on the ground that the school board might not have imposed the sanction of dismissal based on the more limited facts that FDAB finds to be true.

We agree with respondent that FDAB's reversal authority would be hollow indeed were FDAB limited to remanding each time it found that some of the facts relied upon by a school board were untrue or unsubstantiated even if the remaining facts supported the statutory grounds for dismissal. The legislature has not provided such a process.[20] *See* ORS 174.010 (admonishing courts "not to insert what has been omitted"). Rather, where at least some of the facts are true and substantiated and support the cited statutory grounds for dismissal, subsection (6) authorizes FDAB to determine whether to affirm or reverse a school board based on whether the dismissal was unreasonable, arbitrary, or clearly an excessive remedy. That is the only statutory "consequence" provided when FDAB finds that some facts are proven and some facts are not proven.

We therefore conclude that remand to the school board was not required and, in fact, is not allowed by the statute. Accordingly, we hold that, where FDAB finds that at least some of the facts relied on by a school board are true and substantiated and that those facts support at least one of the cited statutory grounds for dismissal, the agency must affirm the board's decision unless it finds that the decision was unreasonable, arbitrary, or clearly an excessive remedy.[21] To

---

[20] The legislature knows how to authorize an agency to remand to a lower tribunal. For example, the Land Use Board of Appeals is authorized to reverse or remand a land use decision under specified circumstances. ORS 197.835. It is significant that the legislature elected not to provide FDAB with similar authority.

[21] We note that some of the language in FDAB's analysis of *Thomas* suggests that FDAB may have concluded that, if it finds that some of the facts relied on by a school board are untrue or unsubstantiated, it has authority to enter an order based on its own judgment about whether dismissal was appropriate. For example, FDAB stated that ORS 342.905 "grants deference to the school district in the specific circumstance where 'the facts are true and substantiated.' The statute does not explicitly state whether there is this same deference if only 'some' of the facts are true and substantiated * * *." If FDAB meant that it is not required to give deference to the school board's decision to dismiss, then we reiterate that, even where only some of the facts are true and substantiated and support a statutory ground

the extent that *Thomas* is inconsistent with that conclusion, we disavow it. We do not do so lightly, but, rather, are compelled to because *Thomas* is plainly wrong under the proper interpretation of ORS 342.905. *See Kambury*, 173 Or App at 379 ("[W]e adhere to the rule of *stare decisis* unless error is plainly shown to exist." (Internal quotation marks and citation omitted.)).

In its third assignment of error, the district argues that FDAB erred in its treatment of a number of the facts that the school board relied on in dismissing respondent. Specifically, the district contends that FDAB failed to give proper weight to certain items of evidence in reaching its conclusions. With one exception, there is substantial evidence in the record to support the agency's findings. ORS 183.482(7) directs us not to substitute our judgment "for that of an agency as to any issue of fact" if there is evidence to support the finding. Furthermore, FDAB is entitled to resolve conflicts in the evidence; the "fact that the conflicts [are] resolved against the district does not make the resolution error." *Bethel School Dist. v. Skeen*, 63 Or App 165, 171, 663 P2d 781, *rev den*, 295 Or 617 (1983).

The noted exception pertains to the district's argument that FDAB erred in concluding that, because the criminal charges against respondent might eventually be dismissed, the school board could not consider the plea agreement as evidence supporting dismissal. We disagree with that characterization of the agency's conclusion. FDAB's order does not suggest that the school board erred in considering the plea agreement but, rather, that the board failed to consider the mitigating circumstance that the charges would likely—in FDAB's view—be dismissed. In any event, we have already discussed our concerns about FDAB's conclusion in our analysis of the district's first assignment of error. Accordingly, we need not consider the third assignment further.

We turn to respondent's assignments of error in her cross-petition. We reject her first assignment, in which she asserts that FDAB's finding that she intentionally drove her van into her estranged husband's truck is unsupported by substantial evidence. Again, we have reviewed the record

for dismissal, FDAB may not substitute its own judgment for that of the school board.

and it supports FDAB's finding that respondent's conduct was intentional. As FDAB noted, respondent testified that she

> "had no memory of actually driving the van into the back of the truck. It is, however, undisputed that the van was started, put into a forward gear and the gas pedal engaged while [respondent] was the sole occupant of the vehicle. It was a 'straight shot' from where [respondent] was parked to the back of the husband's pickup."

Further, as FDAB noted, respondent told two district employees who visited her in the hospital that she had acted purposefully.

In her second assignment of error, respondent argues that FDAB's conclusion that she neglected her duty is not supported by substantial reason, in particular, that FDAB failed to explain how her conduct constituted "neglect." We disagree. FDAB explained that respondent's conduct, which was intentional and public and resulted in two newspaper articles and parental complaints, "adversely affected" respondent's duties to foster positive relations with parents and the community and to uphold the dignity of her profession. FDAB also explained why respondent's conduct constituted neglect even though it occurred "off-duty," discussing its decision in *Poole*, which involved a teacher's conduct in striking his son during an altercation at a public event during the summertime. FDAB's explanation was sufficient.

Finally, respondent asserts that FDAB erred as a matter of law in its interpretation and application of the term "immorality."[22] After the Supreme Court's second remand in *Ross II*, FDAB defined that term as conduct that is selfish and malicious, and shows disregard for the rights or sensitivities of other persons. *Ross v. Springfield School District No. 19*, FDA 80-1 (Order On Second Remand) (Jan 16, 1988). It has applied that definition in at least one other case, in which it concluded that a teacher's effort to persuade an assistant to lie for her constituted immorality. *Thyfault v. Pendleton*

---

[22] In a footnote, respondent also suggests that ORS 342.895(1)(b) is unconstitutional. That issue is unpreserved, and we, therefore, do not consider it.

*School District No. 16R*, FDA 90-4 (Jan 18, 1991). Additionally, in a 1996 case, FDAB did not cite that definition, but nevertheless concluded that the teacher's conduct in purchasing morphine on school grounds amounted to immorality, noting that it violated a specific prohibition of the district and was contrary to state law. *Webster*, FDA 96-1.

Here, after discussing the definition from *Ross*, as well as dictionary definitions, FDAB noted that examples were "easier to articulate" than a definition and proceeded to compare the facts at issue here with the facts at issue in its decisions in *Ross*, *Thyfault*, and *Webster*. FDAB also observed that immorality "harms the legitimate interest of third party entities or individuals or is contrary to community standards like, for example, prohibitions evidenced in criminal statutes" and that prior cases had involved parties that had "engaged in conduct that evidenced a conscious disregard of a known or obvious risk of the sort of third party harm that occurred." FDAB concluded that respondent had engaged in conduct that ignored an obvious risk to a specific vehicle owner and a specific homeowner, was public, thus making the risk more obvious, and violated a "general standard in this state that suicide is not to be condoned."

Contrary to respondent's assertions, FDAB did not rely solely on the fact that respondent had attempted suicide in reaching its conclusion that her conduct constituted immorality. Rather, FDAB also focused on harm to third parties. Although respondent may disagree with FDAB's chosen definition, as the Supreme Court noted in *Ross II*, "the legislature has entrusted the determination of 'immorality' to FDAB, not to the courts beyond the ordinary function of judicial review." 300 Or at 519. FDAB need only follow the criteria it developed and apply them consistently from one case to the next. *Id.* We conclude that it has done so here.

In summary, FDAB's reasoning does not support its conclusion that dismissal was unreasonable and clearly an excessive remedy. We therefore remand to FDAB for further proceedings. We reject the district's assignment of error relating to FDAB's factual findings as well as each of respondent's assignments of error.

Reversed and remanded on petition; affirmed on cross-petition.